Sedigheh and Hessmaddin
**NORANI, Petitioners,**

**v.**

**GONZALES** [1], **Respondent.**

**Docket Nos. 03–40552(L),
03–40554(CON).**

United States Court of Appeals,
Second Circuit.

Submitted: June 8, 2006.

Decided: June 16, 2006.

Robert D. Kolken (Eric W. Schultz, on the brief), Sacks, Kolken & Schultz, Buffalo, NY, for Petitioner.

---

1. Pursuant to Rule 43(c)(2), Fed. R.App. P., Attorney General Alberto R. Gonzales is auto- matically substituted for former Attorney General John Ashcroft.

Patrick M. Flatley, Assistant United States Attorney (for Thomas E. Johnston, United States Attorney for the Northern District of West Virginia), Wheeling, WV, for Respondent.

Before STRAUB, SOTOMAYOR and HALL, Circuit Judges.

PER CURIAM.

Petitioners Sedigheh (A70–517–280) and Hessmaddin (A70–517–281) Norani, through counsel, petition for review of an order by Board of Immigration Appeals ("BIA") Member Lauri S. Filppu denying their motion to reopen. We assume the parties' familiarity with the underlying facts and procedural history of the case.

■ An alien facing removal may, at any time, move to reopen his case to apply for relief "based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii) (2003). This Court reviews the BIA's denial of a motion to reopen for abuse of discretion. See *Kaur v. BIA*, 413 F.3d 232, 233 (2d Cir.2005) (per curiam); *Khouzam v. Ashcroft*, 361 F.3d 161, 165 (2d. Cir.2004). The BIA abuses its discretion when it "provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements; that is to say, where the Board has acted in an arbitrary or capricious manner." *Kaur*, 413 F.3d at 233–34 (quotation marks and citation omitted); *Ke Zhen Zhao v. U.S. Dep't of Justice*, 265 F.3d 83, 93 (2d Cir.2001) (internal citations omitted).

■ In their motion to reopen, the Noranis stated that, because of changed circumstances in Iran, they might be tortured or persecuted if returned there. The Noranis stated that they would face persecution and torture based on a combination of circumstances: (1) Hessmaddin's Jewish religion and nationality; (2) the Noranis' interfaith (Jewish–Muslim) marriage, which violates Iranian law and Muslim law (Shariah); (3) Hessmaddin's substantial business contacts with the Shah's government; and (4) Hessmaddin's violation of Sharia in the United States by selling alcohol.

Hessmaddin's asylum statement mentions the following sequence of events: After the Islamic revolution, he felt that he was under suspicion because of his Judaism and his prior business contacts with the Shah. Fearing for his sons, he brought them to the United States to be adopted by family members who were United States citizens. After he returned to Iran, he was summoned to prison and detained and interrogated for two days before being released on bond. He was brought back for more interrogation on two subsequent occasions. He fled Iran in 1988 after receiving an order to appear before an Islamic court. Since his departure, the Iranian Revolutionary Guard has visited Sedigheh at the Noranis' place of business to inquire about Hessmaddin's whereabouts. Also, in the United States, individuals who Hessmaddin suspects are informants to the Iranian government have visited his grocery store and questioned him about his sale of alcohol and other religious issues.

The Noranis also submitted Hessmaddin's identity card, which lists his mother's name as "Kalimi," apparently a Jewish name, as well as various recent country reports from the Office of the United Nations High Commissioner for Refugees, the United States Department of State, and the United Kingdom Home Office—all post-dating the 1997 merits hearing at

which the Noranis indicated that they were not applying for asylum as well as the July 1998 hearing at which the IJ closed the record. These reports describe a sharply deteriorating human rights situation, torture in prisons, increasingly virulent and official antisemitism (including segregation, constant monitoring, travel restrictions, "imprisonment, harassment, and intimidation," and an increasing association between Jews and Zionism), and a prohibition against interfaith marriage.[2]

■ Under the relevant regulation, there are no time or numeric limitations on a motion to reopen based on changed circumstances, provided the motion is supported by evidence that "could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). Thus, in reviewing the BIA's determination of whether previously unavailable evidence supported the Noranis' motion to reopen, we must inquire whether the evidence could have been presented at the hearing before the IJ. *See Li Yong Cao v.*

*U.S. Dep't of Justice,* 421 F.3d 149, 157 (2d Cir.2005) (inquiring into whether the new evidence was "available at the time of [the petitioner's] original hearing"); *Ke Zhen Zhao v. U.S. Dep't of Justice,* 265 F.3d 83, 95 (2d Cir.2001) (holding that the relevance of certain evidence "would not have been known or obvious at the time of petitioner's exclusion hearing").[3] In this case, the hearing was closed on July 9, 1998, so the BIA was required to determine whether the Noranis had supported their motion to reopen with any evidence unavailable prior to that July 1998 date.

The BIA denied the Noranis' motion to reopen in a three-sentence order because it found that, in a merits hearing in 1997, the Noranis "clearly elected not to proceed with an asylum/withholding of deportation/Convention Against Torture claim before the Immigration Judge," and that the Noranis failed to establish that the evidence they submitted with their motion was material and previously unavailable.[4] This latter finding was an abuse of discre-

---

2. Subsequent events have only confirmed the dangerousness of the situation. President Ahmadinejad, who recently became president, has expressed hostility toward Jews and called for the elimination of Israel. *See* Reuters, *Move Israel to Europe, Iran Leader Suggests,* N.Y. TIMES, Dec. 9, 2005, at A4. Tensions also have been growing between the Iranian and the Israeli and American governments concerning Iran's development of nuclear technology. *See, e.g.,* Michael Slackman, *Iranians Dismiss U.S. Terms For Beginning Direct Talks,* N.Y. TIMES, June 2, 2006, at A12

3. We note that a few cases in this Circuit have referred, in passing, to dates other than the date of the hearing as the baseline for an assessment of whether evidence was previously unavailable. *Compare, e.g., Zheng Zhong Chen v. Gonzales,* 437 F.3d 267, 270 (2d Cir. 2006) (per curiam) (holding that "the materials do not reflect changed conditions in China that impact Chen's particular situation since Chen *filed his asylum application* in 1996"

(emphasis added)), *with Wei Guang Wang v. BIA,* 437 F.3d 270, 274 (2d Cir.2006) (rejecting the argument that an affidavit constituted new evidence because it described events that "took place well before the *BIA denied petitioner's initial application* for asylum" (emphasis added)).

In none of these cases, however, did the evidence in question become available between the time of the original application and the time of the hearing, or between the time of the hearing and the BIA decision. In this case, on the other hand, a good deal of the Noranis' new evidence became available between the July 1998 close of their hearing before the IJ and the BIA's decision in 2003. Thus, we are confronted with a novel issue: which of these dates is the date prior to which evidence must have been unavailable.

4. As the government concedes, the BIA was incorrect in finding that the Noranis waived Convention Against Torture relief, as the Convention had not been implemented when the IJ closed the record in their case.

tion because it was "conclusory," "devoid of reasoning," and failed to account for the substantial record evidence of worsened country conditions (overall, and especially for Jews).[5] Indeed, there can be no question that the Noranis' submitted material, previously unavailable evidence and made a *prima facie* case that they are eligible for relief.[6] *See Poradisova v. Gonzales,* 420 F.3d 70, 82 (2d Cir.2005) (reversing and remanding in such circumstances).

For the foregoing reasons, we GRANT the petitions, REVERSE the BIA's decision, and REMAND to the BIA for consideration of the Noranis' application for relief. The stay of removal previously granted in these petitions shall expire when the mandate issues.

5. Because we find that the BIA abused its discretion in applying the regulations, we do not reach the Noranis' alternative argument that, regardless of what the regulations provide, international law requires that they be given a hearing.

6. Of course, Hessmaddin's testimony about the government's past harassment and detention of him was previously available, and therefore could not be a *basis* for reopening his case (other than going to the additional requirement of *prima facie* eligibility). We have, however, previously noted that, despite past suffering, individuals may hold out hope that permanent relocation via asylum is un-

necessary, and may only come to abandon that hope as bad news accumulates. *See Pavlova v. INS,* 441 F.3d 82, 88–89 (2d Cir.2006) (rejecting an IJ's reasoning that an individual would not flee her country without immediately seeking asylum, and observing that "the decision to seek asylum is a process that, for many applicants, is personal, inscrutable, and dynamic"—and cumulative—rather than "a mathematic equation—impersonal, predictable, and static"). Thus, events from Hessmaddin's past are relevant to the Noranis' present asylum application even though the Noranis previously declined to apply for asylum based solely on these events.