**Yadvender SINGH, Petitioner,**

**v.**

**U.S. DEPARTMENT OF JUSTICE, Attorney General Alberto Gonzales,\* Respondents.**

**Docket No. 03–4900–ag.**

United States Court of Appeals, Second Circuit.

Submitted: May 15, 2006.

Decided: Aug. 29, 2006.

---

\* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft as the respondent in this case.

Stanley H. Wallenstein, New York, N.Y, for Petitioner.

Daniel J. Graber, Assistant United States Attorney, for Stephen P. Sinnott, United States Attorney, for the Western District of Wisconsin, Madison, W.I., for Respondents.

Before: CARDAMONE, CALABRESI, and POOLER, Circuit Judges.

CALABRESI, Circuit Judge:

This appeal concerns the Board of Immigration Appeals' ("BIA") denial of an alien's motion to remand his case so that he could apply, under 8 U.S.C. § 1186a(c)(4)(A), for an extreme hardship waiver of the ordinary requirement that a conditional permanent resident file a joint petition with his spouse to remove the

conditional designation of his residency status. *See* 8 U.S.C. § 1186a(c)(1). Because the reasoning of the BIA's decision contradicts the plain language of its own regulations, and because petitioner's motion to remand was premised on evidence that was previously unavailable, we conclude that the BIA erred in denying the motion. The petition for review is therefore granted, and the case is remanded to the BIA for further proceedings.

## BACKGROUND

Yadvender Singh, a native and citizen of India, married a United States citizen on July 11, 1986. On the basis of this marriage, Singh became a conditional permanent resident on December 2, 1986. Under Section 216 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1186a, Singh could have removed the conditional limitation on his status by filing a joint application with his spouse during a ninety-day period preceding the second anniversary of his lawful entry into the country as a conditional permanent resident. *See* 8 U.S.C. § 1186a(c)(1)(A), (d)(2). On August 18, 1987, however, Singh's first wife obtained an annulment of the marriage. This led petitioner to apply, on September 16, 1988, for a waiver of the joint filing requirement on the ground that he had entered into the marriage in good faith, *see* 8 U.S.C. § 1186a(c)(4)(B). The Immigration and Naturalization Service ("INS") denied Singh's application on March 24, 1989, and began deportation proceedings against him on May 27, 1990, by which time, Singh's conditional resident status had lapsed.

Singh reasserted his request for a good faith marriage waiver before an immigration judge ("IJ") throughout a series of hearings that ran from August 1990 until July 1998. During the pendency of these proceedings, Singh's family circumstances changed significantly. On August 22, 1992, Singh married Harmeet Basra Kaur, a U.S. citizen with whom he subsequently had two children. Their first child was born in November 1996 and a second child in March 2000. Although Singh's lawyer suggested in June 1996—several months before the birth of Singh's first child—that Singh was considering filing an application for an extreme hardship waiver on the basis of his family situation, Singh did not, in fact, apply for such a waiver before the IJ.

Ultimately, on September 25, 2000—two years after the IJ adjourned the hearings and reserved decision—the IJ issued a written opinion denying petitioner's application for a good faith marriage waiver. The IJ concluded that, in light of testimony (by, among others, Singh's first wife) disputing the legitimacy of the marriage, Singh had not satisfied his burden of demonstrating that he had entered into his first marriage in good faith.[1]

Singh appealed the IJ's decision to the BIA in January 2001. Singh conceded, in his argument to the BIA, that he could not establish by a preponderance of the evidence that his first marriage was entered into in good faith. Instead, he requested a remand in order to pursue an extreme hardship waiver based on his second marriage and his U.S.-born children.

On April 9, 2003, the BIA denied Singh's motion for a remand essentially on two grounds. First, the BIA explained that

---

1. At various times during the proceedings, the IJ also denied interspersed requests by Singh for (1) adjustment of status based on his second marriage, (2) suspension of deportation, and (3) voluntary departure. Some of these rulings were announced during the hearings, but were not included in the IJ's written decision. Although Singh argued them, unsuccessfully, to the BIA, Singh did not challenge the BIA's decision as to any of these issues in his petition to us. Those issues are therefore not before us.

the waiver application Singh sought to make was premised on purported hardships that arose *after* his period of conditional residency ended; as a result, these circumstances, the BIA found, could not be considered for the purposes of an extreme hardship waiver. Second, the BIA emphasized that Singh had decided not to seek a hardship waiver before the IJ, opting to apply for a good faith marriage waiver instead. Accordingly, the BIA concluded that a remand was not proper, and dismissed the appeal.

Singh subsequently filed a timely petition for review with us.

## DISCUSSION

■ Singh's motion to remand, since it "does not simply articulate the remedy sought on appeal," but also purports to "rel[y] on newly available evidence," is analyzed under the substantive standards applicable to motions to reopen. *See Li*

*Yong Cao v. U.S. Dep't of Justice*, 421 F.3d 149, 156 (2d Cir.2005). Hence, we review the BIA's denial of Singh's motion for abuse of discretion. *See id.* at 157. Such an abuse may be found if "the Board's decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements; that is to say, where the Board has acted in an arbitrary or capricious manner." *Id.* (internal quotation marks omitted). Thus, although the BIA retains broad discretion to deny such a motion, its discretion is "not unfettered." *See id.* (quoting *Zhao v. U.S. Dep't of Justice*, 265 F.3d 83, 86 (2d Cir. 2001)); *see also INS v. Doherty*, 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992).[2]

In defense of the BIA's denial of Singh's motion, the government argues both of the reasons given by the BIA in its opinion. Because we conclude that neither rationale

---

**2.** To be clear, this appeal does *not* contain a challenge to a denial by the BIA of a hardship waiver application. Rather, it is an appeal only of the BIA's refusal to remand a case so that the agency might consider such an application in the first place. As a result, this case is not affected by our court's recent decision in *Jun Min Zhang v. Gonzales*, 457 F.3d 172 (2d Cir.2006). In *Jun Min Zhang*—which interprets an "extreme hardship" statute that parallels (but is distinct from) § 1186a(c)(4)(A)—we held that "a finding of 'extreme hardship' [to a qualifying relative] under 8 U.S.C. § 1182(i) is a discretionary judgment committed to the BIA (acting on behalf of the Attorney General) and that 8 U.S.C. § 1252(a)(2)(B)(i) precludes us from reviewing such a judgment." *Id.* at 174.

We note, in passing, that the other Courts of Appeals have disagreed as to whether federal courts have jurisdiction to review the merits of the BIA's denial of a waiver for extreme hardship under 8 U.S.C. § 1186a(c)(4)(A). *Compare Ignatova v. Gonzales*, 430 F.3d 1209, 1213 (8th Cir.2005) ("Since we lack jurisdiction to review questions of fact underlying discretionary decisions of the Attorney General, *see* 8 U.S.C.

§§ 1186a(c)(4), 1252(a)(2)(B), we are without jurisdiction to review the denial of the hardship waiver in this case."); *Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir.2004) (per curiam), *and Urena–Tavarez v. Ashcroft*, 367 F.3d 154, 160 (3d Cir.2004), *with Oropeza–Wong v. Gonzales*, 406 F.3d 1135, 1142 (9th Cir.2005) ("Because it is well established in this circuit that [we are deprived of jurisdiction] 'only to acts over which a statute gives the Attorney General pure discretion unguided by legal standards or statutory guidelines,' our jurisdiction depends on the nature of the determinations the BIA makes under § 1186a(c)(4).... We hold that determinations made with respect to statutory waivers under § 1186a(c)(4) are not purely discretionary and are therefore generally subject to review. Furthermore, we hold that the statutory history of that section demonstrates unequivocally that Congress did not intend to strip courts of jurisdiction to review adverse credibility determinations in particular." (citing *Medina–Morales v. Ashcroft*, 371 F.3d 520, 528 (9th Cir.2004))), *and Cho v. Gonzales*, 404 F.3d 96, 102 (1st Cir.2005) ("We hold today only that eligibility rulings under section 1186a remain reviewable by the courts....").

is correct, we vacate and remand the BIA's decision.[3]

First, the government claims that, under 8 U.S.C. § 1186(c)(4), extreme hardship waivers may be premised only on circumstances that occurred during the alien's period of conditional residency. Because

Singh married his second wife and had his two children after May 1990—by which time Singh's conditional residency had been terminated and deportation proceedings had begun—the government argues that the BIA correctly found that Singh's family situation could not be the basis of his waiver application.

---

**3.** The government also seems to contend in its brief that the denial of Singh's application for a good faith marriage waiver renders him ineligible for all "immigration benefits," and hence, that Singh's appeal should be dismissed. The government refers us to Section 204(c) of the INA, 8 U.S.C. § 1154(c), which states:

> [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States ... by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U. S.C. § 1154(c). On the basis of this provision, the government suggests that remanding the case to allow Singh to apply for an extreme hardship waiver would be senseless.

There are at least two problems with the government's argument. First, the BIA did not refer to, let alone rely on, Section 204(c) to justify its denial of Singh's request for a remand. The BIA mentioned Section 204(c) and the circumstances surrounding Singh's first marriage only to support its finding that Singh was ineligible for an *adjustment of status*, a conclusion that Singh does not challenge before us. It gave entirely different reasons for denying Singh an opportunity to apply for an *extreme hardship waiver*. And we cannot, on appeal, substitute an argument— even one the BIA made in another context— for those that the BIA actually gave to support the conclusion Singh disputes on appeal. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) ("The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry."); *see also Cao He Lin v. U.S. Dep't of Justice*,

428 F.3d 391, 400 (2d Cir.2005) ("[W]e will limit our review of the [agency's] decision to the reasons [it] actually articulates.... To assume a hypothetical basis for the [agency's] determination, even one based in the record, would usurp her role." (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943) ("For purposes of affirming no less than reversing its orders, an appellate court cannot intrude upon the domain which Congress has exclusively entrusted to an administrative agency."))).

Second, the record indicates that the IJ's conclusion, which the BIA affirmed without substantial elaboration, was only that Singh had "failed to meet *his* burden of establishing that the marriage was entered into in good faith." (emphasis added). The IJ reached this conclusion despite his misgivings about the pivotal testimony of Singh's first wife, which the IJ described as "at various points rather vague and unclear." Under the circumstances, we cannot conclude that Singh's first marriage has been "*determined* by the Attorney General to have been entered into for the purpose of evading the immigration laws," or that the agency "has *determined* that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c) (emphasis added). Because Singh's failure to satisfy *his* burden of showing good faith is not enough to establish that his first marriage was a sham intended to evade the country's immigration laws, we reject the government's assertion that Singh is statutorily ineligible to apply for an extreme hardship waiver on remand. *Cf. Smolniakova v. Gonzales*, 422 F.3d 1037, 1053 (9th Cir.2005) (vacating and remanding an IJ's finding of a sham marriage and the consequent termination of the alien's conditional residency, where the IJ wrongly placed the burden of proof on the alien to establish that the marriage was proper, rather than on the Attorney General to establish that it was fraudulent).

The BIA's decision, and the government's defense of it, expose a clear conflict between the relevant statute and the agency's corresponding regulation, which, to date, as far as we have found, has not been acknowledged let alone reconciled. On the one hand, the position taken by the government is consistent with the statutory language it cites. Section 216 of the INA, 8 U.S.C. § 1186a(c)(4), which Congress enacted as part of the Immigration Marriage Fraud Amendments of 1986, Pub.L. No. 99–639, 100 Stat. 3537, states: "In determining extreme hardship, the Attorney General shall consider circumstances occurring *only during* the period that the alien was admitted for permanent residence on a conditional basis." 8 U.S.C. § 1186a(c)(4) (emphasis added). On the other hand, the government's argument runs directly contrary to the implementing regulation promulgated by the agency, which says that, "[i]n considering an application for a waiver based upon an alien's claim that extreme hardship would result from the alien's removal from the United States, the director shall take into account *only* those factors that arose *subsequent* to the alien's entry as a conditional permanent resident." 8 C.F.R. § 216.5(e)(1) (emphasis added).

To our knowledge, neither the BIA, nor any Court of Appeals, has addressed the conflict between the statute and the regulation.[4] And commentators have, without discussion, referred to both formulations in describing the state of the law.[5] To decide

---

4. There is, in fact, scant BIA precedent dealing with extreme hardship waiver applications. In one leading case, *Matter of Anderson*, 16 I. & N. Dec. 596, 1978 WL 36475 (BIA 1978), the BIA articulated ten criteria that it considered relevant in determining whether a deportation would cause extreme hardship: (1) the alien's age; (2) family ties in the United States and abroad; (3) length of residence in the United States; (4) health conditions; (5) economic and political conditions in the alien's home country; (6) occupation and work skills; (7) immigration history; (8) position in the community; (9) whether the alien is of special assistance to the United States or to the community; and (10) whether there are alternate means to adjust status. *Id.* at 597. But the case did not include any limitations as to when these factors could arise, and none of the listed factors imply either the time limitation indicated by the statute, *i.e.*, that the circumstances must arise *during* the period of conditional residency, or the time frame prescribed by the regulation, *i.e.*, that the circumstances must arise *after* the alien has become a conditional permanent resident. *Id.* at 598.

Another case, *Matter of Balsillie*, 20 I. & N. Dec. 486, 1992 WL 195809 (BIA 1992), seemingly applied the statutory language of 8 U.S.C. § 1186a(c)(4), *see id.* at 488, but made no reference to the conflicting rule set down in the regulation.

As a result, neither of these cases gives us any clear guidance as to the BIA's position on the matter.

5. *Compare, e.g.*, Eddy Meng, Note, *Mail–Order Brides: Gilded Prostitution and the Legal Response*, 28 U. MICH. J.L. REF. 197, 215 n. 109 (1994) ("In considering 'extreme hardship,' the INS will consider only factors that arose *subsequent* to the [conditional permanent resident's] entry into the United States." (emphasis added)), *and* Vanessa B.M. Vergara, Note, *Abusive Mail–Order Bride Marriage and the Thirteenth Amendment*, 94 NW. U.L.REV. 1547, 1565 (2000) ("In deciding whether to waive any of the requirements for removal of conditional status, the Attorney General may only consider factors that arose *after* the alien obtained [conditional permanent residence (CPR)] status. For example, marital abuse prior to the joint petition for CPR would be irrelevant to assessing an extreme hardship waiver." (emphasis added)), *with* Leslye E. Orloff & Janice V. Kaguyutan, *Offering a Helping Hand: Legal Protections for Battered Immigrant Women: A History of Legislative Responses*, 10 AM. U.J. GENDER SOC. POL'Y & L. 95, 103 (2001) ("In the case of the 'extreme hardship waiver,' the immigrant spouse had to demonstrate that extreme hardship would result from deportation, considering only those circumstances that arose *during* the period that the alien spouse was admitted for permanent residence on a conditional basis." (emphasis added)).

the case before us, however, we need not, and hence do not, seek to resolve the conflict.[6] This is because, in deciding the instant case, the BIA has disregarded its own regulations, and that it cannot do.

At least since *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954), the Supreme Court has held that an administrative agency must adhere to its own regulations. *See also Morton v. Ruiz*, 415 U.S. 199, 235, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."); *Columbia Broad. Sys., Inc. v. United States*, 316 U.S. 407, 422, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942) (holding that agencies are bound to follow regulations on which individuals justifiably rely). In *Montilla v. INS*, 926 F.2d 162 (2d Cir.1991), we expressly adopted the *Accardi* doctrine, interpreting it to hold that, "[t]he failure of the [BIA] and of the Department of Justice to follow their own established procedures [constituted] reversible error." *Montilla*, 926 F.2d at 167. We stressed that, even without proof of prejudice to the objecting party, this doctrine "has continued vitality, particularly where a petitioner's rights are 'affected.' " *Id.* at 167, 169 (quoting *Morton*, 415 U.S. at 235, 94 S.Ct. 1055); *see also Acosta–Montero v. INS*, 62 F.3d 1347, 1351 (11th Cir.1995) ("We must hold the

[BIA] to the regulations the INS has adopted.").

In the case before us, the relevant regulation plainly states that an extreme hardship waiver application may take account of "factors that arose *subsequent* to the alien's entry as a conditional permanent resident." 8 C.F.R. § 216.5(e)(1) (emphasis added). Singh sought a remand in order to apply for an § 1186a(c)(4)(A) waiver based on his marriage to a U.S. citizen and his two U.S.-born children. Because the basis of his proposed application "arose subsequent to [his] entry as a conditional permanent resident," they were, under the governing regulations, permissible considerations on which his waiver request could be grounded. The BIA panel's holding to the contrary contravenes regulations issued by the INS. If the agency wishes to rescind or revise these regulations to render them facially consistent with the relevant statute, it has the authority and the means to do so. *See Butros v. INS*, 990 F.2d 1142, 1146 (9th Cir.1993) (Fernandez, J., concurring) ("All we need to do is hold the BIA to the regulations the INS has adopted. If the INS now wishes to adopt different regulations, that route is available to it."). Until it does so, however, because the BIA's decision in this case "inexplicably departs from established policies," *Li Yong Cao*,

---

**6.** We note, however, that while the BIA decision concords with the statutory language, the BIA regulation that the BIA panel ignored better comports with the legislative history of the Immigration Marriage Fraud Amendments of 1986, Pub.L. No. 99–639. As one commentator has explained, this law "show[ed] Congressional concern for the harm to a citizen child from the conditional residency scheme." Janet M. Calvo, *Spouse–Based Immigration Laws: The Legacies of Coverture*, 28 San Diego L.Rev. 593, 593, 634 (1991) (explaining that the Senate Judiciary Committee considered the extreme hardship

waiver provision as a "safety mechanism" designed to deal with "the potential difficulties inherent in family relations" involving a citizen child) (quoting S. Rep. 491, 99th Cong., 2d Sess. at 8 (1986) (internal quotation marks omitted)). If the timeframe for circumstances that may be considered for hardship waiver purposes was limited to the period of an alien's conditional residency—which can be as short as two years—the interests of citizen children born subsequent to that period would be completely irrelevant, and a key goal of the enactment would seemingly be ignored.

421 F.3d at 157, it constitutes an abuse of discretion.

The government's second argument—which, if valid, would provide an independent, alternate basis for the BIA's decision—is that Singh's motion to remand his case was correctly denied because Singh could have applied earlier for a hardship waiver, but decided not to. Neither the BIA nor the government provides any authority for the proposition that an alien cannot pursue a waiver for which he did not originally apply. *Cf. Norani v. Gonzales*, 451 F.3d 292, 294 (2d Cir.2006) (per curiam) (finding that the BIA abused its discretion in denying a motion to reopen based on changed circumstances for which there are "no time or numeric limitations"). And, as we stated earlier, a motion to remand premised on purportedly new evidence is subject to the same strictures that apply to motions to reopen. Accordingly, the BIA's conclusion that Singh only sought a good faith marriage waiver, even though he "was provided numerous opportunities by the Immigration Judge to apply for the separate [hardship] waiver," is tantamount to a finding that Singh's motion failed to "articulate material, previously unavailable evidence that would be introduced at a new hearing," *Li Yong Cao*, 421 F.3d at 156.

But even if interpreted this way, the BIA's reasoning is still unavailing. As recently explained in *Norani*, "in reviewing the BIA's determination of whether previously unavailable evidence supported [a petitioner's] motion to reopen, we must inquire whether the evidence could have been presented at the hearing before the IJ." *Norani*, 451 F.3d at 294 (citing *Li*

*Yong Cao*, 421 F.3d at 157). In *Norani*, we concluded that the BIA abused its discretion in failing to consider whether the proffered evidence was available at the time when the hearings were closed. *See id.* ("In this case, the hearing was closed on July 9, 1998, so the BIA was required to determine whether the [applicants] had supported their motion to reopen with any evidence unavailable prior to that July 1998 date.").

■ In the appeal before us, Singh's proposed waiver application is premised on the alleged hardships he and his family would endure if he was deported from the United States. The question, therefore, is whether Singh was seeking to present material evidence of hardship that was not available when the IJ closed his hearings. The record shows that the IJ adjourned the hearings, and reserved decision, on July 6, 1998. At that time, Singh and his wife were raising their first child, who was not yet two years old. By the time Singh asked the BIA for a remand to pursue a hardship waiver—in January 2001—he and his wife had two children, the youngest of whom was born in March 2000. It is not for us to assess—at least not in the first instance—whether the change in Singh's family circumstances between July 1998 and January 2001 constituted material evidence that was previously unavailable when the IJ closed hearings two and a half years earlier.[7] That is a question the BIA needed to address before denying Singh's motion to remand. Its failure to do so "devoid of reasoning," and therefore also constitutes an abuse of discretion.

---

7. We are aware that the potential hardship of family circumstances—like evolving country conditions in a nation from which an alien seeks asylum—may wax or wane over time. In theory, this might leave open the possibility that conditional residents will file repeated motions to remand premised on "previously unavailable evidence" of extreme hardship. We are confident, however, that the requirement that the evidence be "material" gives the BIA a sufficient means by which to separate valid motions from frivolous, repetitious ones.

For the foregoing reasons, we GRANT Singh's petition for review, we VACATE the BIA's denial of petitioner's motion to reopen, and we REMAND the case for further proceedings consistent with this opinion.