471 F.3d 353
 Abdoh Ahmed ALREFAE, Petitioner,
v.
Michael CHERTOFF, Department of Homeland Security, Alberto R. Gonzales, United States Attorney General, Julie L. Myers, Assistant Secretary for the Bureau of Immigration and Customs Enforcement, Department of Homeland Security, William Cleary, Bureau of Immigration and Customs Enforcement Detention Removal Field Office Director,[1] Respondents.
 Docket No. 05-3253-AG.
 United States Court of Appeals, Second Circuit.
 Argued: September 12, 2006.
 Decided: December 14, 2006.
 
 Eric W. Schultz, Sacks, Kolken & Schultz, Buffalo, NY, for petitioner.
 Mary K. Roach, Assistant United States Attorney (Kathleen M. Mehltretter, Acting United States Attorney for the Western District of New York, on the brief), Buffalo, NY, for respondents.
 Before: STRAUB, SOTOMAYOR and KATZMANN, Circuit Judges.
 SOTOMAYOR, Circuit Judge.
 
 
 1
 Abdoh Ahmed Alrefae, a citizen of Yemen, petitions for review of a June 2, 2004 order of the Board of Immigration Appeals ("BIA") affirming without opinion a July 15, 2003 decision of Immigration Judge ("IJ") Philip J. Montante, Jr., denying Alrefae's motion to rescind an in absentia order of removal and to reopen removal proceedings on the basis of new evidence. In re Abdoh Ahmed Alrefae, No. Alh-bkb-vxw (B.I.A. June 2, 2004), aff'g No. Aom-whv-nkz (Immig. Ct. Buffalo July 15, 2003). In 1997, Alrefae became a lawful permanent resident on a conditional basis as a result of his marriage to a United States citizen. He was ordered removed in absentia after he and his wife failed to file a timely joint petition to remove the conditional basis of his permanent resident status and he subsequently failed to appear for his removal hearing. We hold that the IJ erred in denying Alrefae's motion to rescind by failing to explain why Alrefae had not rebutted the presumption that he received notice of his removal hearing and by improperly applying this presumption in evaluating Alrefae's claim that exceptional circumstances prevented him from appearing at his hearing. We also hold that the IJ erred in denying Alrefae's motion to reopen because he failed to explain why Alrefae was not prima facie eligible for removal of the conditional basis of his residency status, or why Alrefae's divorce, which did not become final until after his removal hearing, did not constitute new evidence. Because of these errors, we GRANT the petition for review, VACATE the BIA's order and REMAND this case to the BIA for further proceedings.
 
 BACKGROUND
 
 2
 Aliens who attain permanent resident status by marriage to a citizen are initially granted that status on a conditional basis for two years. 8 U.S.C. § 1186a(a)(1); 8 C.F.R. §§ 216.1-.4. Within ninety days before the two-year anniversary of the granting of conditional permanent residence, the alien and his or her spouse must jointly petition, by filing a Form I-751, to remove the conditions on residence, and must attach documentary evidence establishing that the marriage was not entered into for purposes of evading United States immigration laws. 8 U.S.C. §§ 1186a(c)(1), (d); In re Stowers, 22 I. & N. Dec. 605, 609 (B.I.A.1999). Aliens who are unable to file jointly may seek a discretionary waiver of the joint filing requirement from the government on one or more of three bases enumerated at 8 U.S.C. § 1186a(c)(4). Stowers, 22 I. & N. Dec. at 609-10. Among the bases for a waiver is the "good-faith marriage" waiver, under which the alien must show that "the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated (other than through the death of the spouse) and the alien was not at fault in failing to" file jointly. 8 U.S.C. § 1186a(c)(4)(B). If the government denies the waiver application, the alien may seek review of the denial before the IJ in the course of removal proceedings. 8 C.F.R. § 216.5(f).
 
 
 3
 Alrefae entered the United States on a nonimmigrant visa in July 1992 and remained here after the visa expired. On May 31, 1995, Alrefae married Tracy Reilly, a United States citizen, but apparently took no action to adjust his immigration status. On June 13, 1995, he received notice that removal proceedings had been initiated against him for overstaying his visa. In response, he conceded removability and requested voluntary departure, and on August 28, 1995, this request was granted. Alrefae thereafter filed a motion to reopen removal proceedings on the basis of his marriage and to adjust his status. This motion was granted on March 3, 1996, and on January 21, 1997, Alrefae attained permanent resident status on a conditional basis.
 
 
 4
 Alrefae's permanent resident status was terminated on February 25, 1999, after he and Reilly failed to file a joint petition to remove the conditions on that status. Alrefae apparently took no action between 1999 and 2002 in response to the termination. On January 10, 2003, however, Alrefae appeared voluntarily at the Buffalo, New York office of the Immigration and Naturalization Service ("INS")[2] to register pursuant to the National Security Entry-Exit Registration System ("NSEERS") program.[3] At the INS office, officials served Alrefae with a notice to appear for removal proceedings, but did not set a hearing date. On February 27, 2003, the INS mailed a notice of hearing date for March 28, 2003, to the address listed on the notice to appear. Alrefae failed to appear for his hearing and was ordered removed in absentia. A copy of the removal order was mailed to him that day.
 
 
 5
 Alrefae had filed for divorce from Reilly on December 14, 2002, claiming that she was abusive to him and addicted to drugs. He was granted a divorce on May 20, 2003, about two months after he failed to appear for his removal hearing. On June 18, 2003, Alrefae filed a "Motion to Rescind In Absentia Order of Removal and Reopen Proceedings," explaining that his wife had refused to file with him to remove the conditions on his residence because of "her mental state[,] which may be attributable to her addiction to illegal narcotics." He sought rescission of the removal order pursuant to 8 U.S.C. § 1229a(b)(5)(C), claiming that his failure to appear was the result of exceptional circumstances beyond his control — specifically, that he had not received the notice of his hearing date because "[u]pon information and belief, the notice was intercepted by a third party and was therefore never delivered to [him]." Alrefae also asserted that, according to an INS memorandum and under BIA precedent, he was entitled to request a continuance of the removal proceedings pending finalization of his divorce. He therefore claimed that there would have been no reason for him not to appear at the removal hearing had he received notice of it. Moreover, he stated that "on or about May 28, 2003," he had filed a Form I-751 petition with the INS to remove his conditional status along with a request for waiver of the joint filing requirement.[4]
 
 
 6
 On July 14, 2003, Alrefae filed a notarized letter with the Immigration Court stating that his home at "11 Tenbroek St., in Albany, New York" had been burglarized on February 25, 2003, and that soon thereafter he began receiving mail at the address of his friend Fuad Mansour.[5] Alrefae also stated in the letter that Mansour had told him that he lost the mail, but would not sign an affidavit to this effect. Alrefae submitted along with the letter a police report concerning the burglary of his home.
 
 
 7
 The following day, July 15, 2003, the IJ denied Alrefae's motion. The IJ stated that the notice of hearing had not been returned to sender, giving rise to a presumption of delivery. Moreover, he observed that the notice had been sent to the address Alrefae had provided, and Alrefae had not subsequently filed a change of address form with the Immigration Court. For these reasons, the IJ concluded, Alrefae had failed to establish exceptional circumstances that would entitle him to rescission of the in absentia removal order. The IJ also stated that to prevail on a motion to reopen, Alrefae would have had to show prima facie eligibility for the underlying relief sought and present material, previously unavailable evidence. Without further explaining his reasoning, the IJ denied Alrefae's motion to reopen.
 
 
 8
 Alrefae appealed the IJ's decision, and on June 2, 2004, the BIA affirmed without opinion. Alrefae filed a motion under 28 U.S.C. § 2241 in the United States District Court for the Western District of New York, seeking review of the BIA's order. This petition was transferred to this Court as a petition for review pursuant to the REAL ID Act of 2005, Pub.L. No. 109-13, § 106(a), 119 Stat. 231, 311 (codified at 8 U.S.C. § 1252) ("REAL ID Act").[6] See Order, Alrefae v. Ridge, No. 04-cv-0449 (W.D.N.Y. June 24, 2005) (Docket Entry No. 12).
 
 DISCUSSION
 
 9
 Where, as here, the BIA affirms an IJ's decision without opinion, we review the decision of the IJ as the final agency determination. Tu Lin v. Gonzales, 446 F.3d 395, 398 (2d Cir.2006). We review the denial of a motion to reopen for abuse of discretion, which may be found if the decision "provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." Wei Guang Wang v. BIA, 437 F.3d 270, 273 (2d Cir.2006) (internal quotation marks omitted).
 
 
 10
 We note at the outset that we, unlike the parties, construe Alrefae's motion to rescind the in absentia removal order and to reopen proceedings on the basis of new evidence as comprising two distinct motions, which we review under different substantive standards. As we recently explained, although a motion to rescind is a type of motion to reopen, it is distinctive in that a "motion to reopen for purposes of rescinding an in absentia [removal] order . . . seeks to restart proceedings as if the previous proceedings never occurred." Maghradze v. Gonzales, 462 F.3d 150, 152 n. 1 (2d Cir.2006). Because "[d]ifferent requirements pertain to each type of motion to reopen," id., when an alien files a single motion that seeks both rescission of an in absentia removal order on an enumerated ground, see 8 U.S.C. § 1229a(b)(5)(C), as well as reopening of removal proceedings based on new evidence, we treat the motion as comprising distinct motions to rescind and to reopen, and review each under the applicable substantive standards. See Maghradze, 462 F.3d at 152 n. 1 ("We . . . construe the single motion filed here as if it were two separate motions — a `motion to rescind' and a `motion to reopen.'"). Although Alrefae's submissions before the IJ and BIA were not models of clarity regarding the form of relief sought, we note that the IJ invoked the substantive standards for both motions to rescind and motions to reopen.
 
 
 11
 In arguing that we lack jurisdiction to consider the merits of Alrefae's claim of prima facie eligibility for waiver of the joint filing requirement, the government conflates the requirements for a motion to rescind and a motion to reopen. The government is correct that we lack jurisdiction to consider the merits of Alrefae's claim of prima facie eligibility in the context of reviewing the IJ's denial of Alrefae's motion to rescind. Judicial review of in absentia removal orders is limited to three specifically enumerated grounds, none of which concerns the merits of the relief the alien would seek if the in absentia removal order were rescinded. See 8 U.S.C. § 1229a(b)(5)(D). On the other hand, we have jurisdiction over Alrefae's claim that he is entitled to rescission on the grounds of nonreceipt of notice and exceptional circumstances because his claim that the notice of hearing did not reach him goes to his "reasons for . . . not attending the proceeding," one of the three grounds for judicial review. Id. Because, as we will explain, Alrefae's claim that he is prima facie eligible for a waiver of the joint filing requirement is an element of his motion to reopen on the basis of new evidence, the restrictions of 8 U.S.C. § 1229a(b)(5)(D) on judicial review of in absentia removal orders do not apply, and we therefore assume jurisdiction over this claim in the context of reviewing the IJ's denial of Alrefae's motion to reopen.
 
 
 12
 I. Alrefae's Motion to Rescind the In Absentia Order of Removal
 
 
 13
 Although Alrefae claimed that he had not received notice of his removal hearing because his friend lost his mail, the IJ found that Alrefae had failed to rebut the presumption of delivery that applies to notices of removal hearings. The IJ also concluded that because of this presumption, Alrefae had failed to establish that exceptional circumstances prevented him from appearing for his removal hearing. Although, as we will explain, there is a presumption of receipt when notice of a removal hearing was properly sent, the IJ erred by failing to explain why he found that the evidence Alrefae submitted did not rebut this presumption. Moreover, the IJ erred by not analyzing Alrefae's claim of exceptional circumstances independently of his claim of nonreceipt.
 
 
 14
 With exceptions not relevant here, to prevail on a motion to rescind an in absentia removal order, the movant must show either "that the failure to appear was because of exceptional circumstances" or that he or she "did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)."[7] 8 U.S.C. § 1229a(b)(5)(C). Exceptional circumstances are defined as "circumstances (such as battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien." Id. § 1229a(e)(1). The BIA's standard for exceptional circumstances appears fairly stringent, both in terms of the required severity of the circumstances and the proof required to establish a claim. See, e.g., In re B-A-S-, 22 I. & N. Dec. 57, 58-59 (B.I.A.1998) ("Where an alien argues that his failure to appear resulted from a `serious illness,' we normally would expect specific, detailed medical evidence to corroborate the alien's claim."); In re J-P-, 22 I. & N. Dec. 33, 34-35 (B.I.A.1998) (rejecting a claim of exceptional circumstances because a common headache would not constitute a "serious illness" and, even if a serious headache would qualify, the alien's "perfunctory statement" regarding his headache included "no detail regarding the cause, severity, or treatment of the alleged illness").
 
 
 15
 With regard to claims of nonreceipt under 8 U.S.C. § 1229a(b)(5)(C)(ii), there is a presumption that aliens receive notices of removal hearings that were properly mailed, and aliens who move to reopen claiming that they did not receive notice must rebut this presumption. When an alien fails to appear for removal proceedings, an in absentia removal order shall be entered if the government "establishes by clear, unequivocal, and convincing evidence that . . . written notice was . . . provided and that the alien is removable." 8 U.S.C. § 1229a(b)(5)(A) (emphasis added). When an alien seeks to rescind the removal order, however, claiming that he "did not receive notice" of the hearing, "[a]s the use of the word `receive' [in 8 U.S.C. § 1229a(b)(5)(C)(ii)] establishes, when considering the motion to reopen, the central issue no longer is whether the notice was properly mailed (as it is for the purpose of initially entering the in absentia order), but rather whether the alien actually received the notice."[8] Lopes v. Gonzales, 468 F.3d 81, 84 (2d Cir.2006) (per curiam).
 
 
 16
 The BIA has stated that "where service of a notice of a deportation proceeding is sent by certified mail through the United States Postal Service and there is proof of attempted delivery and notification of certified mail, a strong presumption of effective service arises." Matter of Grijalva, 1995 WL 314388, 21 I. & N. Dec. 27, 37 (B.I.A.1995). This presumption can be overcome "by the affirmative defense of nondelivery or improper delivery by the Postal Service," but only if the alien presents "substantial and probative evidence such as documentary evidence from the Postal Service, third party affidavits, or other similar evidence demonstrating that there was improper delivery." Id. Although we have recently held that this exacting standard is inapplicable where, as in Alrefae's case, notice of delivery was sent by regular rather than certified mail,[9] the BIA may apply a less stringent, rebuttable presumption to notices of removal hearings if "the record establishes that the notice was accurately addressed and mailed in accordance with normal office procedures." Lopes, 468 F.3d at 85. Although the BIA in Grijalva spoke in terms of a presumption of delivery, we have held that it is presumed not only that delivery to the alien's mailing address was effective, but also that the alien personally received the notice. See id. When an alien seeks to rescind an in absentia removal order claiming nonreceipt, the IJ must "consider all relevant evidence, including circumstantial evidence, offered to rebut th[e] presumption." Id. at 86.
 
 
 17
 In his motion to rescind, Alrefae appears to have sought relief based on both exceptional circumstances and nonreceipt of notice, and the IJ referred to both of these grounds in his decision. We therefore assume, without deciding, that an alien who claims nonreceipt of notice of his or her removal hearing could also claim that exceptional circumstances prevented him or her from receiving the notice. We focus here on the adequacy of the IJ's explanations for denying Alrefae's claims for rescission.[10]
 
 
 18
 Although the IJ did not cite Grijalva, he invoked a presumption of delivery in rejecting Alrefae's claim of nonreceipt, explaining that "[s]aid notice of hearing was not returned to the court file[,] giving rise of [sic] a presumption of delivery." We need not decide whether the IJ intended to invoke the Grijalva standard, which we have rejected for notices sent by regular mail, or instead a less stringent presumption, because in either case the IJ erred in rejecting Alrefae's claim of nonreceipt by failing to explain why Alrefae had not rebutted the presumption of receipt. Alrefae submitted a notarized letter attesting that he had not received notice because his friend Mansour lost his mail, and he offered a police report as support for his claim that he began receiving his mail at Mansour's home after his own home was burglarized. Although the IJ was correct that there was no evidence of misdelivery — indeed, Alrefae claimed that his mail was lost after it was delivered to his mailing address — Alrefae attempted to show that he had not personally received the notice. The IJ was by no means required to find Alrefae's assertions sufficient to rebut the presumption, but he should have addressed them in his decision. See Lopes, 468 F.3d at 85-86 ("Although an affidavit of non-receipt might be insufficient by itself to rebut the presumption, it does raise a factual issue that the BIA must resolve by taking account of all relevant evidence . . . .").
 
 
 19
 We note several additional facts in the record that, on remand, the IJ might weigh in determining whether Alrefae rebutted the presumption of receipt. First, Alrefae appeared voluntarily to register for the NSEERS program, which may indicate a general willingness to comply with U.S. immigration laws and may suggest that he would not have knowingly failed to appear for his removal hearing. Cf. id. at 86 (noting that promptly notifying the INS of a change of address may indicate "at least arguably" that the alien "is not an absconder"). Second, Alrefae filed his motion to rescind and reopen within a few months of his scheduled removal hearing, and less than a month after receiving his divorce judgment, which also may provide some indication that he would have attended his removal proceeding had he received notice of it. Finally, the IJ might consider, on the other side of the scale, whether Alrefae's assertion that he began receiving his mail at his friend's address only after his own home was burglarized is contradicted by the fact that Alrefae gave his friend's address as his own mailing address when he appeared for NSEERS registration more than a month before the burglary. See supra note 5.
 
 
 20
 The IJ also concluded, without further explanation, that Alrefae had not made out a claim of exceptional circumstances because he failed to rebut the presumption of delivery. Because exceptional circumstances and nonreceipt are independent bases for rescission, it was error for the IJ not to assess Alrefae's exceptional circumstances and nonreceipt claims separately. We do not decide here whether a third party's misplacement of an alien's notice of hearing constitutes exceptional circumstances under BIA precedent, or, if it does, whether the evidence Alrefae submitted was sufficient to establish his claim. On remand, the IJ should assess Alrefae's claim of exceptional circumstances independently of his claim of nonreceipt and explain whether Alrefae is entitled to rescission on this ground on the basis of his claim that he did not receive notice because his friend lost his mail. In doing so, the IJ may consider the totality of the circumstances presented by Alrefae's case. See Kaweesa v. Gonzales, 450 F.3d 62, 68-69 (1st Cir.2006); Romero-Morales v. INS, 25 F.3d 125, 129-31 (2d Cir.1994). After considering all the relevant facts in the record, the IJ may decide that it is necessary to hold an evidentiary hearing to evaluate fully either or both of Alrefae's claims. If, however, the IJ determines that he can reach a decision on Alrefae's claims on the basis of the current record, he is not required to hold such a hearing.
 
 
 21
 II. Alrefae's Motion to Reopen Removal Proceedings
 
 
 22
 To succeed on a motion to reopen removal proceedings before the IJ, an alien must satisfy two requirements. See 8 C.F.R. § 1003.23(b)(3). First, the alien must demonstrate prima facie eligibility for the relief he or she would seek if removal proceedings were reopened. See INS v. Abudu, 485 U.S. 94, 104, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988) (holding that a motion to reopen may be denied if "the movant has not established a prima facie case for the underlying substantive relief sought"). Second, the alien must offer, to the satisfaction of the IJ, "evidence ... [that] is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.23(b)(3). Even if these requirements are met, however, the decision whether to grant a motion to reopen is within the IJ's discretion. Id. We consider these requirements in turn.[11]
 
 A. Alrefae's Prima Facie Eligibility
 
 23
 To be entitled to reopening, Alrefae was required to make a prima facie showing that if his removal proceedings were reopened, he would be eligible for a waiver of the joint filing requirement and thereby entitled to remove the conditions on his residency status. The IJ appears to have concluded that Alrefae failed to establish prima facie eligibility. Yet other than stating that a prima facie showing is required and noting that a movant bears a "heavy burden" to establish eligibility for reopening, the IJ provided no explanation of his conclusion. Although the IJ's failure to provide any analysis of Alrefae's claim would itself require remand, we note that the government has not provided us with any argument as to why Alrefae is incorrect that he would have been able to apply for a waiver of the joint filing requirement if proceedings were reopened.[12]
 
 
 24
 Because Alrefae failed to submit either a joint petition or an application for a waiver within the ninety-day window, he had to establish that he would be entitled to request a waiver outside this window in order to succeed on his motion to reopen. The BIA appears to allow late filing of waiver applications, at least in some circumstances. In Stowers, a decision Alrefae cited in his motion to reopen, the INS terminated an alien's conditional permanent resident status before the ninety-day joint filing window after learning that he and his wife were no longer residing together. 22 I. & N. Dec. at 606. The INS argued that it could not adjudicate the alien's application for a waiver of the joint filing requirement because the application was submitted outside the ninety-day window. Id. at 611. The BIA rejected the INS's position. It noted that "because a waiver application is filed as an alternative to the joint petition, it is normally filed within the 90-day period preceding the end of the 2-year conditional residence period," but held that "in certain situations it is appropriate to file a waiver application before or after the 90-day petitioning period, even where the [INS] affirmatively has terminated an alien's conditional resident status." Id. The BIA explained that "[t]o conclude otherwise would prevent an alien whose marriage is terminated within 21 months of gaining conditional resident status from ever having the conditions of the status lifted, even where the marriage was entered into in good faith or where extreme hardship would result." Id. at 613. It also concluded that the IJ should have continued Stowers's removal proceedings until the INS could adjudicate the waiver application. Id. at 612. The BIA did not distinguish the "certain situations" in which late filing would be permissible from those in which it would not.
 
 
 25
 Alrefae also submitted with his motion to reopen a document that purports to be a memorandum to regional officials from the acting associate director for operations at BCIS.[13] This memorandum addresses the situation of aliens involved in ongoing divorce proceedings during the ninety-day window for filing joint petitions. It states that such persons are ineligible to file for good-faith marriage waivers because their marriages have not yet been terminated, and explains that "[i]f an alien's conditional resident status is terminated because he or she could not timely file a Form I-751, and he or she is placed in removal proceedings, then he or she may request a continuance from the immigration judge to allow for the finalization of the divorce or annulment proceedings." This memorandum would not necessarily require BCIS officials to allow a late waiver application in a case, like Alrefae's, in which an alien had not initiated divorce proceedings prior to or during the ninety-day window, and had not sought a continuance of removal proceedings pending the outcome of the divorce proceedings. Nonetheless, the IJ erred by failing to address in any way Alrefae's argument regarding Stowers and this BCIS memorandum, or otherwise to explain why Alrefae was not prima facie eligible for the relief he sought. Cf. Poradisova v. Gonzales, 420 F.3d 70, 77 (2d Cir.2005) ("Despite our generally deferential review of IJ and BIA opinions, we require a certain minimum level of analysis from the IJ and BIA opinions denying asylum, and indeed must require such if judicial review is to be meaningful.... We also require some indication that the IJ considered material evidence supporting a petitioner's claim.").
 
 
 26
 Moreover, unlike the regulation providing the requirements for joint filing, which requires filing within the ninety-day window, 8 C.F.R. § 216.4, the regulation governing waiver applications contains no express time limit, 8 C.F.R. § 216.5. We urge the BIA on remand to clarify whether the time limits for filing joint petitions ever apply to the filing of waiver applications, given the absence from the implementing regulation of any time limit for filing waiver applications.
 
 B. Previously Unavailable Evidence
 
 27
 The IJ also concluded that Alrefae had failed to provide material, previously unavailable evidence in support of his motion to reopen. Alrefae's divorce did not become final until after the in absentia removal order was entered, and he included a copy of the divorce judgment with his motion to reopen. To determine whether a motion to reopen was supported by previously unavailable evidence, "we must inquire whether the evidence could have been presented at the hearing before the IJ." Norani v. Gonzales, 451 F.3d 292, 294 (2d Cir.2006) (per curiam). Alrefae filed for divorce on December 14, 2002. He was ordered removed in absentia on March 28, 2003. He received a divorce judgement on May 20, 2003, and he filed his motion to reopen on June 18, 2003, attaching his divorce papers to the motion. Because Alrefae's divorce only became final two months after the scheduled date of his removal hearing, he could not have presented evidence of the divorce at this hearing in support of his application for a good-faith marriage waiver, which, as discussed above, appears to be available only to aliens whose divorces are final. The IJ did not explain why, under these circumstances, evidence of the divorce was not previously unavailable.[14]
 
 CONCLUSION
 
 28
 Although in reviewing Alrefae's motion to rescind the in absentia removal order, the IJ properly recognized that a presumption of receipt applies to claims of nonreceipt of notices of removal hearings, he erred both by failing to explain adequately why Alrefae had failed to rebut this presumption and by conflating Alrefae's claims for rescission on the grounds of nonreceipt and exceptional circumstances. The IJ also erred by failing to explain adequately his reasons for denying Alrefae's motion to reopen on the basis of new evidence. The petition for review is therefore GRANTED, the BIA's order is VACATED and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Secretary of Homeland Security Michael Chertoff is automatically substituted for former Secretary Tom Ridge, Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft and Assistant Secretary Julie L. Myers is automatically substituted for former Assistant Secretary Michael J. Garcia as respondents in this case
 
 
 [2]
 On March 1, 2003, the INS was reconstituted as the Bureau of U.S. Immigration and Customs Enforcement ("BICE") and the Bureau of U.S. Citizenship and Immigration Services ("BCIS")See Monter v. Gonzales, 430 F.3d 546, 548 n. 1 (2d Cir.2005). In this opinion, we refer to the agency by the name it bore at the time of the relevant agency action.
 
 
 [3]
 The NSEERS program, which was initiated in 2002 in response to "[r]ecent terrorist incidents," imposed "special registration requirements for nonimmigrant aliens from certain designated countries, and other nonimmigrant aliens whose presence in the United States requires closer monitoring, to require that they provide specific information at regular intervals to ensure their compliance with the terms of their visas and admission, and to ensure that they depart the United States at the end of their authorized stay." 67 Fed. Reg. 52,584 (Aug. 12, 2002). Yemen is among the countries so designated. 67 Fed. Reg. 70,526 (Nov. 22, 2002)
 
 
 [4]
 On June 24, 2003, Alrefae filed supplemental evidence with the Immigration Court that included a notice from the "Vermont Service Center" acknowledging receipt of his I-751 form on June 13, 2003. The record does not indicate the disposition of Alrefae's waiver application
 
 
 [5]
 Although Alrefae claims to have begun receiving his mail at Mansour's address only after the February 25, 2003 burglary, he provided this address to INS officials when he appeared for NSEERS registration on January 10, 2003. As we discuss below, the IJ may consider this discrepancy as a factor in assessing Alrefae's claim of entitlement to rescission
 
 
 [6]
 Section 106(c) of the REAL ID Act requires that motions for relief under 28 U.S.C. § 2241 that were pending as of May 11, 2005, be transferred to the "court of appeals in which a petition for review could have been properly filed under [8 U.S.C. § 1252(b)(2)]." Because Alrefae's motion was pending on this date, Notice,Alrefae v. Ridge, No. 04-cv-0449 (W.D.N.Y. June 14, 2005) (Docket Entry No. 11), his case was properly transferred pursuant to Section 106(c).
 
 
 [7]
 Paragraph (1) of section 1229(a) concerns the content of the notice to appear, and paragraph (2) governs notice of changes in the time or place of removal proceedings
 
 
 [8]
 We note that althoughLopes discussed a "motion to reopen," the alien in that case, like Alrefae, filed a joint motion to rescind and reopen following imposition of an in absentia removal order, see 468 F.3d at 82, and he claimed nonreceipt of his notice of hearing as part of his motion to rescind the order. Thus, the motion to reopen in that case was what we refer to here as a motion to rescind.
 
 
 [9]
 The Immigration and Nationality Act ("INA") was amended in 1996 to permit notice of removal proceedings by regular mailSee Illegal Immigration Reform and Immigration Responsibility Act of 1996, Pub.L. No. 104-208, § 304(a)(3), 110 Stat. 3009, 3009-587 to 3009-588.
 
 
 [10]
 In his briefs to the BIA and on appeal to this Court, Alrefae has continued to cast his claim for rescission in terms of both exceptional circumstances and nonreceipt. We therefore disagree with the government that Alrefae's claim that he did not receive notice is unexhausted
 
 
 [11]
 We agree with Alrefae that he is not ineligible under 8 U.S.C. § 1229a(b)(7) for the relief he would seek upon reopening. This provision bars an alien from obtaining relief for ten years under several sections of the INA after a final order of removal has been entered against him or herin absentia. Because the relief Alrefae would seek if proceedings were reopened-removal of the conditions on his resident status — is governed by 8 U.S.C. § 1186a, a provision not mentioned in § 1229a(b)(7), we consider whether Alrefae has demonstrated prima facie eligibility for the relief he seeks.
 
 
 [12]
 The government's argument regarding Alrefae's prima facie eligibility focused exclusively on the question of our jurisdiction under 8 U.S.C. § 1229a(b)(5)(D) to reviewin absentia removal orders. As previously discussed, we reject the government's contention that we lack jurisdiction to consider Alrefae's claim regarding prima facie eligibility because we consider this question in the context of reviewing the denial of his motion to reopen rather than his motion to rescind.
 
 
 [13]
 The IJ did not find this document inauthentic, nor does the government so claim on appeal. Our conclusion that the IJ erred by failing to explain his denial of Alrefae's motion to reopen, however, in no way depends on the document's authenticity
 
 
 [14]
 As discussed, it is unclear whether Alrefae could have sought a continuance of removal proceedings pending finalization of his divorce. We express no opinion as to whether Alrefae's divorce should be considered previously unavailable evidence if he could have sought a continuance