**Li Yong CAO, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE & Attorney General Gonzales,\* Respondents.**

**Docket No. 03–4041.**

United States Court of Appeals, Second Circuit.

Argued: May 19, 2005.

Decided: Aug. 31, 2005.

---

\* United States Attorney General Alberto Gonzales is substituted for former Attorney General John Ashcroft as respondent. *See* Fed. R.App. P. 43(c)(2).

150

Bruno Joseph Bembi, Hempstead, NY, for Petitioner.

Earle B. Wilson, Senior Litigation Counsel, Civil Division, United States Department of Justice (Marcos Daniel Jiménez, United States Attorney for the Southern District of Florida, Peter D. Keisler, Assistant Attorney General, and Dexter Lee, Assistant United States Attorney, on the brief), Miami, FL, for Respondents.

MINER and POOLER, Circuit Judges, BLOCK, District Judge.**

POOLER, Circuit Judge.

Petitioner Li Yong Cao petitions for review of an order of the Board of Immigration Appeals ("BIA") entered December 16, 2002, summarily affirming the Immi-

** The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

gration Judge (IJ)'s decision, rendered orally on March 1, 2000, rejecting his claims for asylum and withholding of removal and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("Convention Against Torture"), December 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 85, denying his motion to remand the case to the IJ for consideration of new and previously unavailable evidence, and ordering him removed to the People's Republic of China. We find that the BIA's denial of Cao's motion to remand was an abuse of discretion, and we therefore vacate the BIA's order and remand for further proceedings.

## BACKGROUND

### Cao's Entry and Claim

Petitioner is a thirty-two-year-old male native and citizen of China who entered the United States from Canada around August 26, 1999. On or around October 4, 1999, he applied for asylum. An asylum officer denied Cao's application and placed him in removal proceedings. At his initial appearance before the IJ on December 10, 1999, Cao conceded removability and renewed his asylum application, asserting, in addition, claims for withholding of removal and relief under the Convention Against Torture, which is implemented by the Foreign Affairs Reform and Restructuring Act of 1998, Div. G of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub.L. No. 105–277, 112 Stat. 2681, 2761, 2822–23, § 2242 (1998) (codified at 8 U.S.C. § 1231 note).

### Evidence at the Hearing

The hearing continued with the presentation of evidence on March 1, 2000. Cao testified that he entered the United States in August 1999. Cao subsequently said it was 1998, but when the IJ asked, "1998?,"

he again said, "1999." He testified that he married his wife on May 18, 1998, and registered the marriage the following day, obtaining a marriage license dated May 19, 1998. He stated that he and his wife had one male child. Cao offered various documents into evidence to corroborate this family background, including (1) his household register, issued May 3, 1999, providing his address in "Caozhu Village, Tantou Town, Changle City," listing his wife Xue–Hua Chen and first child Rong Cao as members of his household, stating that he was a farmer, stating that his wife moved into his household "from Kongkong, Linnan Village, Tantou Town, Changle City upon married 5/3/1999," and stating that his son was born on March 9, 1999, and registered as a member of the household on August 19, 1999; (2) his marriage certificate, issued May 19, 1998, stating that he married Xue–Hua Chen, and containing a photograph of them together; (3) his son's birth certificate, issued March 3, 1999, stating that his son was born on March 9, 1999; and (4) photographs of himself with his wife and son, taken when his son was about one month old.

Cao initially stated that he left China on August 22, 1998. But he then testified: "What, did I say '98. Actually, it's '99. Yes, I made a mistake. It should be '99." He stated that he left China because he wanted to have more than one child but was prohibited from doing so by the Chinese family planning policy. He explained that about two months after the birth of his son, in May 1999, family planning officials notified him and his wife that his wife would be required to have an IUD inserted. He stated that it was his belief, based on what had happened to others in the vicinity, that failure to submit to such an IUD insertion could lead to destruction of one's house or arrest of a close relative. Desiring to have another child, the couple

went into hiding on May 8 or 9 in Cao's wife's aunt's village, which was about a half-hour drive away. The couple remained there in hiding for about four months. Cao stated that almost immediately after he and his wife went into hiding, on May 10, family planning officials went looking for them at his house and, failing to find them, removed all of their electrical appliances.

In July Cao's wife went for a check up at a hospital, which lasted for about fifteen minutes, and resulted in the discovery that she was four months pregnant. Cao stated that this diagnosis was made during a visit to a private doctor. When referred to a statement in his original asylum application, Cao stated that the examination occurred at a public hospital. Also in July, Cao sold a hardware store that he owned in his home village for over 700,000 RMB. After several more unsuccessful visits to their house, family planning officials arrested Cao's father on August 6, 1999, and announced that a fine of 5,000 RMB was being imposed. Cao's mother attempted to pay the fine and secure her husband's release, but officials told her that her husband would only be released when Cao's wife surrendered herself. On August 8, Cao's wife surrendered and paid the fine and Cao's father was released. Later that day Cao's wife was sent to Changle City Hospital where her fetus was aborted and an IUD was inserted.

On cross-examination Cao acknowledged that his household register states that his wife moved into his house "upon married" on May 3, 1999. Cao explained that this was not inconsistent with the marriage certificate and his testimony that they were married in March 1998, because after marrying in March 1998 his wife continued to be listed on her parents' household registry as a member of her parents' household until the new registry was obtained

on May 3, 1999. Cao also stated that he had obtained his notarial birth certificate during the period that he was in hiding. Cao stated that he could present no documentation to prove that the forced abortion or IUD insertion had happened, that his wife received no documentation of her ongoing regular visits to the doctor every four months, and that such records are retained by the doctor.

In response to questioning from the IJ, Cao stated that there had been no particular reason for him to obtain a copy of his notarial birth certificate at the time that he obtained it, but that he obtained it only because a friend who worked for the notarial office told him that many people were getting them and so he thought "I might need it in the future." Cao stated that he was not afraid of being discovered by the family planning officials from whom he was at the time hiding, because the office where he obtained his birth certificate was a separate office in a different location from the office of the family planning officials. The IJ also inquired into why Cao's household register and his son's birth certificate listed different ID numbers for him. All other documents were consistent as to Cao's ID number, and all documents agreed as to his wife's ID number. Cao stated that he had never noticed the discrepancy and could not explain it.

### The Immigration Judge's Decision

In an oral decision, the IJ denied Cao's application for asylum, withholding of removal, and relief under the Convention Against Torture, holding that Cao failed to meet his burden of proof and that his testimony was incredible. The IJ relied on findings that (1) the documents Cao submitted were of limited persuasiveness; (2) Cao's testimony was internally inconsistent; (3) some of the information provided by Cao was uncorroborated; (4) parts of Cao's testimony was inherently implausible or incredible; and (5) portions of Cao's

testimony were at odds with United States State Department reports on country conditions in China.

Regarding the weight to be given the documents, the IJ noted his "serious doubts regarding the authenticity of some of the documents presented by the respondent, or in the alternative that the information contained in these documents if authentic would undermine the respondent's testimony rather than support it." The IJ noted that none of the documents were authenticated by the U.S. consulate in China, though the IJ stated that he believed this easily could have been done. The IJ noted reasons to doubt the authenticity of the documents, including (a) the discrepancy in the marriage dates apparently listed in the household register and the marriage certificate, (b) the discrepancy between Cao's ID number as listed on the register as opposed to the other documents, and (c) the implausibility of Cao's explanation of why he obtained the notarial birth certificate while he was supposedly in hiding from authorities.

Regarding internal inconsistencies in Cao's testimony, the IJ noted the two occasions on which Cao had to correct his testimony regarding the year during which events occurred, changing his response from 1998 to 1999. The IJ stated that, therefore, Cao had not established his entry date and so had not established that he applied for asylum within one year of entry as required. While the IJ stated that he would "not make a formal finding that respondent is statutorily barred" on this basis, as he would in any event have to reach the merits in deciding on the application for withholding, he noted that the possibility that Cao was in the U.S. beginning in 1998 rendered less persuasive his testimony about things that happened to him in China in 1999. The IJ also found that Cao had changed his story about where his wife's July examination took place, initially stating that it was at a private doctor's office but later stating that it was at a public hospital.

With regard to implausibilities in Cao's testimony, in addition to Cao's explanation of why he obtained his notarial birth certificate, the IJ found it implausible that Cao was able to sell his hardware store while he was supposedly in hiding. The IJ also noted the implausibility of Cao's claim that family planning officials removed the electrical appliances from his house only one day after his wife was notified of her obligation to have an IUD inserted, given (a) Cao's testimony that women are normally permitted two months to comply with such orders, and (b) country condition reports that the IJ described as stating that enforcement of family planning policy in China is lenient with regard to agricultural households. The IJ also found it implausible that Cao's wife would seek a pregnancy test at a public hospital despite knowledge of the fact that if pregnancy was discovered an abortion would be required.

Regarding country conditions, the IJ opined that Cao's assertion that family planning policy in his area provided for a recalcitrant woman's home to be destroyed or relatives to be arrested in order to force compliance with an ordered IUD insertion was contrary to country condition reports and not corroborated. Citing the 1998 State Department China Profile, which was entered into evidence, the IJ found that Cao's story was inconsistent with (1) the fact that the family planning policy is more lenient with respect to agricultural households, and (2) the fact that removal of appliances from the home, detention of the father, and assessment of a fine are harsher penalties than normally applied to enforce the policy.

Regarding corroboration, the IJ noted the absence of any corroborating letters or

affidavits from individuals with personal knowledge of the events Cao related, such as his going into hiding, the forced abortion or IUD insertion, or the fine that was allegedly paid, and the lack of medical documentation to corroborate the medical procedures on his wife.

### Appeal and Motion to Remand Before the Board of Immigration Appeals

Cao appealed to the BIA, arguing (1) that the IJ did not make a specific finding that Cao's wife did not suffer a forced abortion, (2) that the IJ erred in requiring authenticated documents, (3) that inconsistencies identified by the IJ were minor and reasonably explained, (4) that the IJ selectively cited the country condition report, ignoring sections that corroborated Cao's story, (5) that the IJ erred in requiring additional corroboration, and (6) that Cao met his burden to prove eligibility for asylum. Cao's brief did not specifically address withholding or relief under the Convention Against Torture.

Cao subsequently filed a supplemental brief informing the BIA that his wife, Xue–Hua Chen, entered the United States on March 15, 2001, and applied for asylum herself based on the same facts on which he founded his claim. Cao additionally informed the BIA that his wife was currently pregnant with her second child and would deliver around April 2002. He submitted as supporting documentation a copy of her asylum application, which corroborated his story in all significant details, and her medical records from a hospital in Flushing, NY, indicating a terminated pregnancy as part of her medical history. Cao therefore moved to remand the case to the IJ for consideration of the new evidence. Cao later submitted a further supplement to his appeal brief, providing the additional information that the child was born on April 17, 2002, in New York, and providing as evidence a copy of the child, Kevin Cao's birth certificate, and four photographs of the couple with their new baby.

By order dated December 16, 2002, the BIA summarily affirmed the IJ's decision without opinion, but wrote addressing the motion to remand. Describing Cao's motion as one "based upon his claim of 'changed circumstances' as predicated upon the birth of his second child in the United States," the BIA denied the motion because Cao "provided few facts about the present basis for his claim and no evidence showing any possibility that a person in his circumstances would be persecuted if returned to China."

### The Petition for Review

Cao timely petitioned for review by this Court of the BIA's order, reiterating the positions taken before the BIA that the IJ had given erroneously inordinate weight to minor inconsistencies, erred in requiring authentication of documents, and misrepresented the contents of the country condition reports by selectively ignoring corroborating portions, and arguing that the IJ's findings of fact were not supported by substantial evidence and that the IJ applied an erroneously high burden of proof in requiring further corroboration. Cao also argues that the BIA abused its discretion in denying his motion to remand the case to the IJ for a new hearing in light of the new evidence that is available now that his wife has entered the United States and given birth to his second child.

We agree that the BIA abused its discretion in denying Cao's motion to remand. We therefore grant his petition for review and order that the case be remanded for further proceedings before the IJ. Because a new hearing before the IJ is in any event required for consideration of the totality of

the evidence in light of the new evidence now available, we need not consider whether the IJ made any errors that would themselves require remand for a new hearing.

## DISCUSSION

### I. Requirements to Establish Eligibility for Asylum

"To establish eligibility for asylum, a petitioner must show that he is a 'refugee' within the meaning of the Immigration and Nationality Act, i.e., that he has suffered past persecution on account of 'race, religion, nationality, membership in a particular social group, or political opinion,' or that he has a well-founded fear of future persecution on these grounds." *Qiu v. Ashcroft,* 329 F.3d 140, 148 (2d Cir.2003) (quoting 8 U.S.C. § 1101(a)(42)). Once an asylum applicant has established eligibility for asylum, the decision whether to grant asylum rests with the discretion of the Attorney General, *see* 8 U.S.C. § 1158(b)(1), and is generally not reviewable unless "manifestly contrary to law and an abuse of discretion," 8 U.S.C. § 1252(b)(4)(D); *see also Melendez v. United States Dep't of Justice,* 926 F.2d 211, 216–18 (2d Cir.1991) (holding that while BIA's findings of fact informing decision whether applicant is eligible for asylum are reviewed for substantial evidence, ultimate discretionary determination whether to grant asylum is reviewed for abuse of discretion).

The BIA originally held that application of the Chinese "one family, one child" policy did not constitute persecution on account of any of the enumerated grounds and so did not suffice to establish eligibility for asylum. *See In re Chang,* 20 I. & N. Dec. 38, 43 (BIA 1989). But in 1996 Congress passed legislation providing that forcible application of this policy consti-

tutes persecution on account of political opinion:

> [A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42). The BIA has since held that the forcible application of the Chinese family planning policy to a male applicant's wife constitutes persecution as to the male applicant, allowing him to stand in the shoes of his wife in establishing eligibility for asylum on the basis of her forced sterilization or abortion. *See In re C–Y–Z–,* 21 I. & N. Dec. 915, 918–19 (BIA 1997).

 While establishing a well-founded fear of future persecution automatically establishes an applicant's eligibility for asylum, establishing past persecution creates only a rebuttable presumption of such a well-founded fear and thus of eligibility for asylum. The government may generally overcome this presumption by showing, by a preponderance of the evidence, that conditions in the country from which the applicant fled have changed sufficiently that any such fear is no longer well-founded, *see Qiu,* 329 F.3d at 148, or that the applicant could avoid persecution by relocating to a different region of that country and that it would be reasonable to expect him to do so, *see* 8 C.F.R. § 208.13(b)(1)(i)(B). The BIA has held that because the persecution of forcible

sterilization or abortion is "permanent and continuous," it inherently generates an irrebuttable presumption of a well-founded fear of future persecution. *See In re Y–T–L–,* 23 I. & N. Dec. 601, 605–08 (BIA 2003); *see also Qu v. Gonzales,* 399 F.3d 1195, 1202–03 (9th Cir.2005) (following *Y–T–L–*). Even in the absence of a well-founded fear of future persecution, an applicant who has established past persecution may be granted asylum in the exercise of discretion for certain compelling humanitarian reasons such as the severity of the past persecution or the likelihood that serious harm not attributable to persecution would follow removal. *See* 8 C.F.R. § 208.13(b)(1)(iii).

Therefore, a showing by Cao that his wife was subjected to a forced abortion in China would, under *C–Y–Z–,* establish that Cao suffered past persecution which, under *Y–T–L–,* would lead to an irrebuttable presumption of a well-founded fear of future persecution and thus conclusively establish his eligibility for asylum.

## II. Standard of Review

■ We review the BIA's findings of fact for substantial evidence, and defer to the BIA's reasonable interpretations of the immigration laws. *See Liao v. United States Dep't of Justice,* 293 F.3d 61, 66 (2d Cir.2002).

■■ A motion to remand that does not simply articulate the remedy sought on appeal will be held to the substantive standards applicable either to a motion to reconsider or to reopen. *See In re Coelho,* 20 I. & N. Dec. 464, 471 (BIA 1992). A motion to remand that relies on newly available evidence is held to the substantive requirements of a motion to reopen.

*See id.; cf. Zhao v. United States Dep't of Justice,* 265 F.3d 83, 90 (2d Cir.2001) (finding that motion that relies on new evidence, as opposed to an error of law or fact, is treated as motion to reopen and not motion to reconsider); 8 C.F.R. § 3.2(c)(4)[1] (providing for BIA to treat motion to reopen that is made before issuance of final order of removal as motion to remand); Executive Office for Immigration Review; Motions and Appeals in Immigration Proceedings, 61 Fed.Reg. 18,900, 18,901–02 (Apr. 29, 1996) (stating that BIA has discretion to decide whether to adjudicate or to remand if motion to reopen is made before issuance of final order of removal).

■ The BIA has "broad discretion" to deny a motion to remand grounded on new evidence. *See INS v. Doherty,* 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992); *accord Coelho,* 20 I. & N. Dec. at 471–72. Permissible reasons to deny such a motion include (1) the movant's failure to make a prima facie case of eligibility for asylum; (2) the movant's failure to comply with the requirement of 8 C.F.R. § 3.2(c)(1) that his motion articulate material, previously unavailable evidence that would be introduced at a new hearing; or (3) a determination that even if the applicant were eligible, asylum would be denied in the exercise of discretion. *See Doherty,* 502 U.S. at 323, 112 S.Ct. 719 (citing *INS v. Abudu,* 485 U.S. 94, 104–05, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988)). Furthermore, the BIA has held that it ordinarily will not grant such a motion unless the movant has met the "heavy burden" of demonstrating a likelihood that the new evidence presented would alter the result in the case. *Coelho,* 20 I. & N. Dec. at 473; *cf. Abudu,* 485 U.S. at 110, 108 S.Ct. 904 (stating that

1. 8 C.F.R. § 3.2(c)(4) has since been recodified at 8 C.F.R. § 1003.2(c)(4). Citations to the Code of Federal Regulations in this opinion are to the version in effect when the BIA issued its decision in December 2002.

motion to reopen is analogous to motion for a new trial in a criminal case on the basis of newly discovered evidence, and that therefore movant faces a "heavy burden").

■ The BIA's discretion to deny such a motion is "not unfettered," however. *Zhao*, 265 F.3d at 86. We review the BIA's denial of a motion to remand for consideration of new evidence for abuse of discretion, and will find such abuse if "the Board's decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements; that is to say, where the Board has acted in an arbitrary or capricious manner." *Id.* at 93 (internal citations omitted); *see also Doherty*, 502 U.S. at 323, 112 S.Ct. 719 (stating that review of denial of motion to reopen is for abuse of discretion); *Blanco v. INS*, 68 F.3d 642, 646–47 (2d Cir.1995) (holding that BIA abused its discretion in denying motion to reopen).

### III. Cao's Motion to Remand

■ Cao fulfilled all that was required of him to support a motion to remand grounded on new evidence under 8 C.F.R. § 3.2(c)(1). He informed the BIA that his wife had entered the country, and was now available to testify in corroboration of the facts underlying his claim. He attached to his motion a copy of her sworn statement in support of her own asylum claim, which corroborates Cao's testimony in all significant respects, including the key matter of her forced abortion. He also attached records from his wife's medical examination in the United States, and proof of the birth of their second child in the United States. Cao thus fulfilled his obligation to recite and corroborate the existence of new evidence that would be presented at a new hearing. He argued both that future per-

secution by Chinese family planning authorities would be more likely now that the couple has an additional child, and that the new evidence-including his wife's testimony and hospital records as well as the birth of their second child-was corroborative of his original claim that he and his wife had suffered past persecution for their opposition to the "one family, one child" policy while in China.

The evidence that Cao articulated is certainly material to his asylum claim and was certainly not available at the time of his original hearing. The in-court testimony of Cao's wife and her medical records from the United States were not available before his wife's arrival in the United States, and because this evidence tends to prove that Cao's wife suffered a forced abortion, it is clearly material to his claim of past persecution, which is largely predicated on his wife's forced abortion. Evidence of the birth of Cao's second child was also certainly not available when the child had not yet been born. This evidence is obviously material to the likelihood that Cao would suffer future persecution because it establishes that he is in violation of Chinese family planning policy, and is also arguably material to Cao's claim of past persecution in that it tends to corroborate his testimony that he and his wife have sought to have children in excess of the limitations imposed by that policy. We note that, according to the State Department's 1998 country conditions report, Chinese family planning policy prohibited couples in Cao's home province of Fujian from having a second child unless the first was female and the children were separated by at least four years.

The BIA, describing Cao's motion as one based on "changed circumstances" predicated on the birth of his second child in the United States, denied the motion stating only that he had "provided few facts about

the present basis for his claim and no evidence showing any possibility that a person in his circumstances would be persecuted if returned to China." The BIA's order is devoid of any language addressing Cao's principal argument—that his wife's testimony, medical records, and childbirth constituted new corroborative evidence that cast doubt on the IJ's finding that his testimony regarding past persecution in the form of his wife's forced abortion could not be credited. As in *Blanco,* "[t]o the extent [the BIA] ruled on the issue that was before it, [it] ignored the principal evidence advanced by the petitioner," 68 F.3d at 646—evidence that his wife was subjected to a forced abortion in China.

The BIA abused its discretion by failing to address the principal evidence and argument on which Cao relied in seeking remand to the IJ. Furthermore, while a "heavy burden" must be. met in order to prevail on a motion to remand for consideration of new evidence, Cao appears to have met that burden here, as his wife's testimony, if credited, would conclusively establish his eligibility for asylum. *See Zhao,* 265 F.3d at 95–96. In *Zhao* we held that the BIA abused its discretion when it denied a motion to reopen for consideration of previously unavailable medical evidence that the petitioner's wife had been sterilized. *Id.* at 88–89, 93. The BIA had denied the motion, stating only that the sterilization occurred prior to the original hearing and that therefore the medical evidence could have been collected and presented at that time. *Id.* at 89. Describing the latter finding as one based on "improper[ ] ... speculation," *id.* at 96, and finding the BIA's decision ambiguous, we remanded for clarification from the BIA of whether it had actually found as a matter of fact that the sterilization occurred, but we stated that in the event that the BIA was to respond that it did not so find, "petitioner must be granted a new

hearing for the purpose of determining whether his wife was forcibly sterilized," because "under the specific circumstances of this case ... [petitioner's] burden" to prove that the medical evidence was not previously available "was met," *id.,* and, in light of that medical evidence, the BIA's explanation of its reasons for denying the petitioner the opportunity to present evidence at a new hearing, which made reference only to the requirement of previous unavailability, was inadequate, *id.* at 95.

Under *Zhao,* where a petitioner has met his burden to present material, previously unavailable evidence and that evidence, if credited, would establish the petitioner's prima facie eligibility for asylum, we will remand with instructions that the BIA grant the petitioner's motion to remand unless it determines that the motion should be denied for reasons independent of the petitioner's burden to present such evidence. *See* 265 F.3d at 95–96.

The facts of the instant case militate just as strongly for such an order as those of *Zhao.* Here, Cao plainly met his burden to establish the existence of material, previously unavailable evidence, and if credited, that evidence would clearly establish his eligibility for asylum under *C–Y–Z–.* The BIA, nevertheless, denied his motion to remand for wholly inadequate reasons. In fact, the considerations supporting remand here are stronger than were those present in *Zhao.* Here, not only are previously unavailable medical records now available to substantiate that Cao's wife has had an abortion, but Cao's wife herself is now available to testify in support of Cao's asylum claim, and may therefore corroborate other elements of Cao's story, including the forced character of the abortion. This extent of corroboration is greater than was presented in *Zhao.* The new evidence that is now available tends to undermine the IJ's reliance on Cao's lack of

corroboration of his wife's forced abortion and other events of which his wife should have personal knowledge. Moreover, Cao's new evidence directly supports his claim, and, if credited, may establish his eligibility for asylum under *C–Y–Z–* regardless of whether he was himself deemed credible.

We conclude that remand is necessary to allow the BIA either to grant Cao's motion to remand for a new hearing before the IJ, or to articulate an adequate reason for denying that motion. Because of the possibility that Cao will be granted a new hearing, it is not necessary for us, at this time, to consider the significant issues that Cao raises regarding the IJ's decision on the merits of his claim, such as (1) whether the IJ relied on speculation not supported by substantial evidence in finding that Cao could reasonably be expected to obtain authentication of his official Chinese documents and that because he failed to do so they were entitled to limited weight; and (2) whether substantial evidence supported the IJ's findings that (a) Cao's testimony contained internal contradictions because he twice corrected himself as to the date on which events occurred, and because he stated that a private doctor examined his wife at a public hospital, (b) Cao's marriage certificate and household registry were inconsistent as to the date of his marriage, and (c) Cao's testimony was inconsistent with the State Department's China country conditions reports. While we need not address these issues ourselves in light of our disposition of this case, we note them in order to bring them to the attention of the IJ and BIA should the IJ or BIA wish to address them during the course of the proceedings on remand.

## CONCLUSION

For the foregoing reasons, Cao's petition for review is granted, the BIA's order denying his motion to remand and ordering him removed to China is vacated, and the case is remanded for further proceedings consistent with this opinion.