QING DI ZHENG, Petitioner,

v.

Michael B. MUKASEY, Attorney
General,[1] Respondent.

No. 07–0394–ag.

United States Court of Appeals,
Second Circuit.

Dec. 11, 2007.

Bruno Joseph Bembi, Hempstead, N.Y.,
for Petitioner.

Patrick J. Glen, Trial Attorney, Office of
Immigration Litigation (Peter D. Keisler,
Assistant Attorney General, Civil Division,
Patricia A. Smith, Senior Litigation Coun-

1. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales as a respondent in this case.

**372**

sel, on the brief), United States Department of Justice, Washington, D.C., for Respondent.

PRESENT: Hon. AMALYA L. KEARSE, Hon. CHESTER J. STRAUB and Hon. PETER W. HALL, Circuit Judges.

### SUMMARY ORDER

Petitioner Qing Di Zheng, a native and citizen of the People's Republic of China, seeks review of a January 19, 2007 order of the BIA denying Zheng's motion to remand and affirming the June 21, 2005 decision of Immigration Judge ("IJ") Douglas B. Schoppert denying his applications for asylum and withholding of removal.[2] *In re Qing Di Zheng*, No. A 97 950 103 (B.I.A. Jan. 19, 2007), *aff'g* No. A 97 950 103 (Immig. Ct. N.Y. City, June 21, 2005). We assume the parties' familiarity with the underlying facts and procedural history in this case.

A motion to remand that does not simply articulate the remedy sought on appeal will be held to the substantive standards applicable either to a motion to reconsider or to reopen. *See Li Yong Cao v. U.S. Dep't of Justice*, 421 F.3d 149, 156 (2d Cir.2005). We review the denial of a motion to reopen or reconsider for abuse of discretion. *See Kaur v. BIA*, 413 F.3d 232, 233 (2d Cir.2005).

In general, the BIA has "broad discretion" to deny a motion to remand based on new evidence, and the BIA "has held that it ordinarily will not grant such a motion unless the movant has met the 'heavy burden' of demonstrating a likelihood that the new evidence presented would alter the result in the case." *Li Yong Cao*, 421 F.3d at 156 (quoting *Matter of Coelho*, 20 I. & N. Dec. 464, 473 (BIA 1992)). The BIA's

discretion, however, is not "unfettered." *Id.* at 157 (internal quotation marks omitted). An abuse of discretion may be found where the agency's decision "provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements; that is to say, where the Board has acted in an arbitrary or capricious manner." *Kaur*, 413 F.3d at 233–34 (internal quotation marks omitted).

In *Li Yong Cao*, we vacated the BIA's denial of a motion to remand because the BIA failed to address whether newly available corroborative evidence—testimony of the petitioner's newly arrived wife, and her medical records and evidence of the birth of the couple's second child—"cast doubt on the IJ's finding" that petitioner's claims lacked credibility. 421 F.3d at 158. The IJ there made an adverse credibility finding based on internal inconsistencies in Cao's testimony, implausibilities, findings that documents were of questionable authenticity, a finding that "portions of Cao's testimony were at odds with United States State Department reports on country conditions in China," and lack of corroboration. *Id.* at 152–53. We held that the possibility that the new evidence would corroborate the petitioner's claims warranted remand, while declining to consider whether substantial evidence supported the IJ's adverse credibility findings. *Id.* at 159.

In this case, the BIA likewise exceeded its allowable discretion in declining to remand the matter in light of newly available evidence. The IJ found that because Zheng's wife was not available for cross-examination, her letter, offered in corroboration of Zheng's story, was not "entitled to sufficient weight to overcome" the IJ's

**2.** The BIA found that Zheng waived review of the IJ's denial of his application for relief under the Convention Against Torture. Zheng does not challenge that finding in his petition for review before this Court.

"concerns about the respondent's credibility."[3] Then, presented with a motion to remand so that Zheng could submit testimony from his newly arrived wife, the BIA denied the motion finding that Zheng had not produced any "previously unavailable evidence that is likely to show that his wife's repeating statements that she provided previously makes his testimony more plausible than when he testified before the Immigration Court."

In failing to recognize that Zheng's wife's availability for testimony might alter the result in the case, the BIA exceeded the bounds of its allowable discretion. First, the BIA's decision reflects a misunderstanding of what happened below. The IJ discounted the wife's previously provided statement solely due to her *unavailability* for cross-examination. Thus, her in-court testimony has the obvious potential to change whether the IJ finds Zheng credible. Second, when the IJ relies on lack of corroboration in an adverse credibility determination, the BIA may not assume that corroboration, if introduced and credited, would serve no purpose. We

have noted that corroboration indeed may be relevant to a determination of whether a petitioner is credible, and may be required "if it would reasonably be expected, even where the applicant's testimony is credible" to determine whether the applicant has met his or her burden of proof. *See Diallo v. INS*, 232 F.3d 279, 290 (2d Cir.2000).

Moreover, reviewing the agency's factual findings under the substantial evidence standard, *see* 8 U.S.C. § 1252(b)(4)(B); *Belortaja v. Gonzales*, 484 F.3d 619, 623 (2d Cir.2007); *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 400, 406 (2d Cir. 2005), we note that the IJ's adverse credibility holding and his alternative holding that, even if credible, Zheng's testimony did not establish eligibility for asylum rest on several flawed premises.[4] Several of the remaining inconsistencies, as well as the asylum-eligibility issue, pertain to portions of Zheng's claim of "other resistance" to China's family planning policies and could be specifically addressed and corroborated by Zheng's wife, since she was a

---

**3.** The IJ also declined to credit a letter from Zheng's mother offered in corroboration because she also was not available for cross-examination and because her letter contained inconsistencies with Zheng's testimony. This, however, does not determine whether the wife's presence would have an effect on the outcome in Zheng's case.

**4.** First, in finding that it was implausible that Zheng was able to raise 30,000 yuan to pay a fine when his first baby was born, the IJ failed to consider Zheng's testimony that he paid the fine by borrowing money from his relatives and friends. Second, the IJ found it "improbable" that the authorities would search for Zheng, but impose no sanctions on his wife (who also physically interfered with their efforts to take Zheng into custody), yet the IJ failed to consider that Zheng's wife had already allegedly been forced to undergo an intra-uterine device insertion. Third, it is unclear whether Zheng should have known the names of his mother-in-law or the doctor

who delivered his baby, when he described being estranged from his mother-in-law, and there is little information concerning the circumstances surrounding the delivery of the baby. Moreover, it does not appear that the IJ considered pertinent Chinese customs for referring to ones' elders or relatives in this assessment. *See* Wenshan Jia *et al., Chinese Communication Theory and Research* 24 (2002) (noting that it is especially uncommon in China for younger persons to address their older relatives by name and for members of the opposite sex to address each other by name). Fourth, the IJ found it implausible that Zheng was able to leave the family planning office, yet he failed to acknowledge Zheng's explanation that his wife "block[ed]" the officials with her body. Finally, Zheng's failure to mention that he injured one of the family planning officials in his written asylum application was a minor inconsistency, given the fact that he referenced the altercation in that application. *See Secaida–Rosales v. INS*, 331 F.3d 297, 308 (2d Cir.2003).

participant in the relevant incidents. *See Shi Liang Lin v. U.S. Dep't of Justice,* 494 F.3d 296, 309–10 (2d Cir.2007) (en banc) (explicitly preserving a basis for asylum eligibility for "other resistance to a coercive population control program"). Though we need not rule on these issues because of the possibility that Zheng will be granted a new hearing, the fact that the IJ's findings and conclusions were flawed, at least in part, lends support to Zheng's argument that the newly available testimony from his now-present wife, if credited, might alter the result in the case. *See Li Yong Cao,* 421 F.3d at 159.

In light of the fact that the IJ expressly declined to credit Zheng's wife's letter solely because of her unavailability for cross-examination, and that several of the IJ's findings were flawed, we find that the BIA exceeded its allowable discretion in holding that Zheng did not meet his "heavy burden" to demonstrate a likelihood that testimony from his newly-available wife, if credited, would alter the result in the case. *See Li Yong Cao,* 421 F.3d at 158 (citing *Ke Zhen Zhao v. U.S. Dep't of Justice,* 265 F.3d 83, 95–96 (2d Cir.2001)).

For the foregoing reasons, the petition for review is GRANTED, the decision of the BIA is VACATED, and the case is REMANDED for further proceedings consistent with this order.