Singh v. Garland

BIA
Kolbe, IJ
A206 894 356

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of October, two thousand twenty-three.

PRESENT:
> DEBRA ANN LIVINGSTON,
> *Chief Judge,*
> JON O. NEWMAN,
> BETH ROBINSON,
> *Circuit Judges.*

_____

KARANBIR SINGH, AKA HARPREET SHERPA, AKA KARANVIG SINGH,
> *Petitioner,*

v.

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
> *Respondent.*

_____

20-2159
NAC

**FOR PETITIONER:**             Anas J. Ahmed, Esq., Jackson Heights, NY.

**FOR RESPONDENT:**             Brian Boynton, Acting Assistant Attorney General; Shelley R. Goad, Assistant Director; Kristin Moresi, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Karanbir Singh, a native and citizen of India, seeks review of a June 24, 2020, decision of the BIA affirming a July 12, 2018, decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").[1] *In re Karanbir Singh,* No. A 206 894 356 (B.I.A. June 24, 2020), *aff'g* No. A 206 894 356 (Immig. Ct. N.Y. City July 12, 2018). We assume the parties' familiarity with the underlying facts and procedural history.

We have considered the IJ's decision as supplemented by the BIA, i.e., including the denial of Singh's motion to remand. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review factual findings for substantial evidence

---

[1] Singh did not address the agency's denial of his CAT claim in his brief, nor did he argue it before the BIA. Accordingly, he has waived this issue. *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).

and questions of law *de novo*. *Paloka v. Holder*, 762 F.3d 191, 195 (2d Cir. 2014). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We review the agency's denial of a motion to remand for abuse of discretion. *See Li Yong Cao v. U.S. Dep't of Just.*, 421 F.3d 149, 157 (2d Cir. 2005).

Singh, who is a Sikh from Punjab and a member of the Shiromani Akali Dal Amritsar Party, also known as the Mann Party, asserted that members of the rival Akali Dal Badal Party ("Badal Party") beat him and threatened to kill him if he did not join their party. An asylum applicant must show that he has suffered past persecution, or has a well-founded fear of future persecution, on account of race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. § 1158(b)(1)(B)(i); 8 C.F.R. § 1208.13(b). Where, as here, the agency assumes past persecution, there is a rebuttable presumption of a well-founded fear of future persecution based on the original claim. *See* 8 C.F.R. § 1208.13(b)(1). The Government may rebut that presumption if it shows by a preponderance of the evidence either that (1) "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution," or (2) "[t]he applicant could avoid future persecution by relocating to another part of

the applicant's country of nationality . . . and under all circumstances, it would be reasonable to expect the applicant to do so." *Id.* §§ 1208.13(b)(1)(i) (asylum), 1208.16(b)(1)(i) (withholding of removal).

We conclude that the agency reasonably determined that the Government demonstrated that Singh could safely relocate within India and that it would be reasonable for him to do so. Factors relevant in determining the reasonableness of relocation include "whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties." 8 C.F.R. § 1208.13(b)(3) (effective to Nov. 2018);[2] *Singh v. Garland*, 11 F.4th 106, 117–18 (2d Cir. 2021).

The record before the IJ contained the following evidence. First, the 2017 U.S. State Department Country Report on Human Rights Practices on India, which

---

[2] This version of the regulation was in effect at the time of the IJ's decision. The current version lists the factors as: "the totality of the relevant circumstances regarding an applicant's prospects for relocation, including the size of the country of nationality or last habitual residence, the geographic locus of the alleged persecution, the size, numerosity, and reach of the alleged persecutor, and the applicant's demonstrated ability to relocate to the United States in order to apply for asylum."

indicated that "[t]he law provides for freedom of internal movement." The Government in addition submitted a map entitled "Ruling Parties in Different States of India," which showed that the Badal Party was not in power in any state in India in 2017; the Indian National Religion Census of 2011 indicating that, though their population is small, there are Sikhs living in every state in India; a report from the Law Library of Congress on the feasibility of relocation for Sikhs in India which states that "there appear to be no legal obstacles for members of the Sikh faith to relocate to other areas of India"; and a report from the Immigration and Refugee Board of Canada stating that "Sikhs do not face difficulties relocating to other areas of India."

The IJ also considered Singh's personal circumstances. Singh testified that he had never committed any crimes in India, that he was not a high ranking official, and that he had never led a militant group. Singh is young, single, childless, and healthy; he has a high school education plus one year of college; and he was able to find work as a cashier while living in the United States. Based on this evidence, the IJ reasonably concluded that Singh could relocate to another part of India where he would not face persecution from the Badal Party and that it would not be unreasonable for him to do so. *See* 8 C.F.R. § 1208.13(b)(3).

The BIA did not abuse its discretion by denying Singh's request to remand for consideration of additional country conditions evidence. *See Li Yong Cao*, 421 F.3d at 157 (explaining that an abuse of discretion occurs where the BIA's "decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements; that is to say, where the Board has acted in an arbitrary or capricious manner." (quoting *Ke Zhen Zhao v. U.S. Dep't of Justice*, 265 F.3d 83, 86 (2d Cir. 2001))). In his brief to the BIA, Singh argued that he could not reasonably relocate because the Badal Party is allied with the Bharatiya Janata Party ("BJP"), which is in power at the national level, and that both parties will target him throughout India on account of his Mann Party membership and support of Khalistan (the creation of an independent Sikh state). He attached three news articles to show the alliance between the Badal Party and the BJP. The articles refer to the BJP as the Badal Party's "major partner" and "old ally," and state that they had meetings to coordinate a strategy for elections in Punjab. But the articles do not discuss whether the BJP and Badal Party coordinate acts of violence against members of the Mann Party; the articles refer to their alliance only in terms of campaign strategy specific to Punjab. Accordingly, the BIA did not abuse its discretion in

concluding that the new evidence would not change the outcome. *See Jian Hui Shao v. Mukasey*, 546 F.3d 138, 168 (2d Cir. 2008) (holding that movant has the "heavy burden of demonstrating that the proffered new evidence would likely alter the result in h[is] case" (quoting *INS v. Abudu*, 485 U.S. 94, 110 (1988))).

Singh's additional challenges to the agency's relocation finding are unavailing. He does not cite evidence to support his claims that movement within India is not possible for Sikhs or that the police throughout India support the Badal Party. Contrary to his argument, the IJ did not deny asylum because he was a low-ranking member of his party. Rather, the IJ reasonably concluded, based on Singh's own testimony, that it would be reasonable for him to relocate to another region of India because there was no indication that police had any interest in locating or pursuing him for any reason. Additionally, as the Government points out, he did not exhaust his argument that the Government did not identify a specific part of India to which he could relocate. *See Lin Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 107 n.1, 122 (2d Cir. 2007).

The agency's conclusion that DHS rebutted the presumption of a well-founded fear of future persecution by demonstrating that Singh could reasonably relocate is dispositive of both asylum and withholding of removal. *See* 8 C.F.R.

7

§§ 1208.13(b)(1)(i)(B), 1208.16(b)(1)(i)(B). Accordingly, we do not reach the agency's alternative fundamental change determination. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

8