Singh v. Garland

BIA
Segal, IJ
A206 442 904

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of January, two thousand twenty-four.

PRESENT:
JON O. NEWMAN,
MICHAEL H. PARK,
MARIA ARAÚJO KAHN,
*Circuit Judges.*

_____

SHIVDEV SINGH,
*Petitioner,*

v.                                                                                    21-6111
                                                                                      NAC

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
*Respondent.*

_____

FOR PETITIONER:          Thomas V. Massucci, Esq., New York, NY.

**FOR RESPONDENT:** Brian M. Boynton, Principal Deputy Assistant Attorney General; Susan Bennett Green, Senior Litigation Counsel; Monica M. Twombly, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Shivdev Singh, a native and citizen of India, seeks review of a February 5, 2021, decision of the BIA affirming a July 23, 2018, decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Shivdev Singh*, No. A206 442 904 (B.I.A. Feb. 5, 2021), *aff'g* No. A206 442 904 (Immig. Ct. N.Y. City July 23, 2018). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed both the IJ's and the BIA's decisions "for the sake of completeness." *Wangchuck v. DHS*, 448 F.3d 524, 528 (2d Cir. 2006). "[W]e review legal conclusions de novo" and findings of fact for "substantial evidence." *Jagdeep Singh v. Garland*, 11 F.4th 106, 113 (2d Cir. 2021). "[T]he administrative

findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

**I. Asylum and Withholding of Removal - Internal Relocation**

Where, as here, the agency concludes that an asylum applicant suffered past persecution, the applicant is entitled to a presumption of a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). [1] The burden then shifts to the Government to rebut that presumption. *Id.* § 1208.13(b)(1)(i), (ii). The Government may rebut the presumption if it establishes by a preponderance of the evidence that the applicant can "avoid future persecution by relocating to another part of the applicant's country of nationality . . . , and under all the circumstances, it would be reasonable to expect the applicant to do so." *Id.* § 1208.13(b)(1)(i)(B), (ii); *see also Surinder Singh v. BIA*, 435 F.3d 216, 219 (2d Cir. 2006) ("Asylum in the United States is not available to obviate re-location to sanctuary in one's own country."). In determining whether internal relocation is reasonable, the IJ considers, among any other relevant factors, "whether the applicant would face other serious harm in the place of suggested relocation; any

---

[1] This memorandum cites the version of the regulations in effect at the time of the IJ's decision.

3

ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties." 8 C.F.R. § 1208.13(b)(3).

Substantial evidence supports the agency's determination that the Department of Homeland Security ("DHS") met its burden to demonstrate that Singh could safely and reasonably relocate within India to avoid persecution by members of the Congress Party who had targeted him in his home state of Punjab because of his support for the Shiromani Akali Dal Amritsar Party ("SADA"). First, the agency properly determined that Singh was not persecuted by the government because he testified that he was attacked by members of a rival party. *Jagdeep Singh*, 11 F.4th at 115 ("An applicant's allegation that he was persecuted by members of a political party—even one that is in power nationally or . . . is aligned with a party in power nationally—does not establish that the applicant was persecuted by the government."). Singh alleged that the police refused to take his reports, but he did not allege that they harmed him. *Id.* at 116 (explaining that a failure of the police in Punjab to assist a petitioner did not mean "that police in Punjab would seek to find him if he returned to the country and lived in another state or that they would assist others in doing so" (quotation marks omitted)).

4

Second, the agency did not err in concluding that DHS demonstrated that Singh could safely relocate within India. The IJ considered Singh's testimony about relocation and the background evidence in the record. Further, the IJ took administrative notice of census statistics of the total populations, the number of Sikhs, and the political parties in power in Haryana and Delhi—areas with significant Sikh populations that were not controlled by the Congress Party. We have repeatedly recognized that "[a]n Indian citizen . . . 'is unlikely to face persecution for his Sikh beliefs and his membership in [the Mann Party]'[2] and 'any threat faced by such an applicant in India is not country-wide.'" *Jagdeep Singh*, 11 F.4th at 118 (quoting *Surinder Singh*, 435 F.3d at 219). Singh testified that he would have to provide identification if he moved, but the agency was not required to accept his testimony, especially in the absence of corroborating evidence to support those allegations or his contention that there was a "hit list" of Sikhs. Nor would such evidence establish that Singh would be targeted for persecution in other areas given his low level of political activity and past harm only by local members of the Congress Party. And contrary to Singh's testimony, the State Department's Country Report on Human Rights Practices provided "that the

---

[2] The Mann Party is another name for SADA.

5

government does not restrict internal movement within India."

Third, the agency properly determined that it would be reasonable for Singh to relocate given his young age (25 years old), language abilities (fluent in Punjabi and some English), work experience, and lack of physical or psychological issues. While in India, Singh worked in farming and at a computer store and, while in the United States, he worked in construction and as a truck driver, and he testified that he did not have any physical or psychological issues.

In sum, the agency reasonably concluded that DHS rebutted the presumption of future persecution given the lack of restrictions on internal movement and the evidence of Sikh populations outside of areas under Congress Party control. *See* 8 C.F.R. § 1208.13(b)(1)(i)(B), (ii); *Jagdeep Singh*, 11 F.4th at 118. This finding was dispositive of asylum, withholding of removal, and CAT relief. *See* 8 C.F.R. § 1208.16(b), (c)(3) ("In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered, including, but not limited to . . . [e]vidence that the applicant could relocate . . . ."); *Lecaj v. Holder*, 616 F.3d 111, 119–20 (2d Cir. 2010) (holding that where the record does not demonstrate chance of persecution required for asylum, it "necessarily fails to

demonstrate" the likelihood of harm for withholding of removal and CAT relief).

**II.    Motion to Remand - New Evidence**

Singh also presented new evidence to the BIA and requested remand.  A motion to remand to the IJ for consideration of new evidence presented on appeal is subject to the same standards as a motion to reopen.  *See Li Yong Cao v. U.S. Dep't of Just.*, 421 F.3d 149, 156 (2d Cir. 2005).  "A motion to reopen proceedings shall not be granted unless it appears . . . that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing."  8 C.F.R. § 1003.2(c)(1).  "[T]he movant has . . . the heavy burden of demonstrating a likelihood that the new evidence presented would alter the result in the case."  *Li Yong Cao*, 421 F.3d at 156 (quotation marks omitted).  We review the agency's denial of a motion to remand for abuse of discretion.  *Id.* at 155.

Singh argued for remand based on increased violence against minorities. The BIA determined that the new evidence would not likely change the IJ's findings that Singh could avoid future persecution by relocating because the reports and articles were generalized, and he did not show that he was "similarly situated" to members of his party with national notoriety who had suffered

persecution. Several reports and articles discussed the growing power of the Bharatiya Janata Party (BJP) and the privileged status of Hinduism, linking Hindu nationalism to violence against minorities in India; however, although the sources identified Sikhs as a minority, they focused on violence against Muslims. Accordingly, the BIA did not abuse its discretion in concluding that this general evidence would not change the outcome as it did not reflect increased violence against Sikhs.

Singh also offered two articles reporting a 2019 conviction of three Sikh men in Punjab for "waging war against" the Indian government based, at least in part, on their possession of written materials about Khalistan and the creation of a separate Sikh state. The articles reported that the individuals were not found to have possessed weapons or ammunition, or to have committed violent acts. The BIA did not abuse its discretion in concluding that this evidence was unlikely to change the outcome because Singh had the burden of proof for remand and did not specify how he was similarly situated to those individuals or how this single prosecution in Punjab was evidence of nationwide persecution of Sikhs—*i.e.*, he did not establish how the evidence would change the relocation finding. *Id.* at 156–57 (recognizing that a motion to remand will not ordinarily be granted

8

"unless the movant has met the 'heavy burden' of demonstrating a likelihood that the new evidence presented would alter the result in the case" (quotation marks omitted)).

**III. Humanitarian Asylum**

Humanitarian asylum is available to an applicant who has suffered past persecution but lacks a well-founded fear of future persecution if the applicant "demonstrate[s] compelling reasons for being unwilling or unable to return to the country arising out of severity of the past persecution" or "establishe[s] that there is a reasonable possibility that he . . . may suffer other serious harm upon removal to that country." 8 C.F.R. § 1208.13(b)(1)(iii). Singh argues that the evidence he presented with his motion to remand supports humanitarian asylum. He argued that he experienced "brutal violence at a young age" and, with the rise of violent Hindu nationalism, "he is likely to suffer significant psychological harm."

First, Singh does not explain how his past harm was sufficiently severe or had the long-lasting effects warranting humanitarian asylum. *See Jalloh v. Gonzales*, 498 F.3d 148, 151–52 (2d Cir. 2007) (requiring an applicant for humanitarian asylum to show both "severe harm and the long-lasting effects of that harm" (quotation marks omitted)). Second, as to "other serious harm," Singh

9

does not expand his argument beyond a conclusory statement that he is likely to suffer significant psychological harm. Because Singh had the burden of proof for both humanitarian asylum and to establish that remand would change the result in his case and did not do more than offer this conclusory allegation of future psychological harm to establish a basis for humanitarian asylum, the BIA did not err in rejecting the claim on appeal. *See* 8 C.F.R. § 1208.13(a); *see Li Yong Cao*, 421 F.3d at 156.

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court